[No. 267.  Decided August 1, 1891.]

J. E. AUSTIN AND JOHN H. CARR V. THE CITY OF SEATTLE, HARRY WHITE, *as Mayor of said City,* H. W. MILLER, *as Clerk of said City,* C. W. FERRIS, *as Comptroller of said City,* W. L. AMES, *as Treasurer of said City,* W. V. RINEHART, C. H. HEILBRON AND J. F. COCHRAN, *as the Board of Public Works of said City.*

MUNICIPAL BONDS—STREET ASSESSMENTS—LIMIT OF INDEBTEDNESS—UNIFORM TAXATION.

Article 8, § 7 of the charter of the city of Seattle, adopted in 1890, providing that the cost of improving streets in said city shall be assessed upon the lands benefited thereby in proportion to their frontage upon the improvement, is not in violation of the constitutional provision that taxes shall be according to value, and shall be equal and uniform.

Article 8, § 9 of the charter of the city of Seattle (1890), providing that "the city shall be liable for the payment of both principal and interest" of bonds issued for the payment of local improvements, the cost of which is to be assessed against the property benefited, makes the city primarily liable for such indebtedness; and where the city's existing indebtedness is in excess of the one and one-half per cent. limit prescribed by the constitution, the assent of three-fifths of its voters is necessary to authorize the issuance of such bonds.

Indebtedness for water, sewerage and light purposes does not constitute a part of the general indebtedness of the city, but is authorized, under article 8, § 6 of the constitution, in excess of the five per cent. of municipal indebtedness permitted for general purposes.

*Certified from Superior Court, King County.*

Action by J. E. Austin and John H. Carr against the city of Seattle to enjoin the issuance and sale of street improvement bonds. Judgment for defendant. Plaintiffs appeal.

*A. Battle,* for appellants.

*Orange Jacobs,* for respondent.

The opinion of the court was delivered by

STILES, J.—There are two questions presented for decision in this case: (1) Is the provision of § 7, article 8 of the charter of the city of Seattle, adopted October 1, 1890, constitutional, it providing that the cost of improving streets in that city shall be assessed and levied upon the property benefited thereby and abutting thereon, to the center of the blocks, or to the distance of 120 feet on each side of the improvement, if the abutting land is not platted, and that the said cost shall be assessed upon such property in proportion to the number of feet of such lands or lots fronting thereon? (2) It being conceded that the city of Seattle has already passed the one and one-half per cent. limit of indebtedness, can it, without popular vote to increase its indebtedness, issue street improvement bonds under the provisions of § 9, article 8 of said charter.

1. The first proposition, it is claimed by the appellants, must be answered in the negative, because, under the constitution, all taxes and assessments for such special purposes must be levied according to the value of the property taxed. It is true that article 7 of the constitution expressly provides that taxes in the State of Washington shall be according to value, and also that they shall be equal and uniform. It is true, also, that it must be conceded that special taxes or assessments levied for local improvements in cities and towns are so levied under the exercise of a branch of the taxing powers of the state. But, while the question has heretofore been the subject of much controversy in the courts, we think the doctrine is well established at this time that the general use of the term "taxes" in the constitution does not necessarily include what is meant by the term "assessments," in connection with street and other local improvements, but applies only to the larger exercise of the sovereign power of the state, either directly or through its inferior

instrumentalities of county, city, town, school district, etc., in raising general revenues for the support and maintenance of government. In some of the states, as Illinois, Wisconsin, Tennessee and Alabama, under their earlier constitutions, in which there was no particular mention of assessments or special taxes, but only a general provision that taxes should be equal and uniform and according to value, it was held by the courts of those states that there could be no such thing as a special local assessment upon a portion of the property within the limits of a municipal corporation to defray the expenses of improvements peculiarly beneficial to such local areas; *City of Chicago v. Larned,* 34 Ill. 203; *Mobile v. Dargan,* 45 Ala. 310; *Weeks v. Milwaukee,* 10 Wis. 242; *McBean v. Chandler,* 9 Heisk. 349 (24 Am. Rep. 309); the theory of those courts being that any improvement made by a municipal corporation which would authorize taxes of any kind to pay for it must be a public improvement, and therefore must be paid by the public generally, through the levy of taxes upon the whole community. In Alabama, under the constitution of 1875, the provisions of which are very similar to our own, the case of *Mobile v. Dargan* was disregarded, and the correctness of its reasoning criticised and denied. *Mayor, etc., v. Klein,* 89 Ala. 461 (7 South. Rep. 386). And in Illinois, under her constitution of 1870, which contains a provision in almost the exact language of section 9, art. 7 of our own constitution, the case of the *City of Chicago v. Larned* was held to be no longer applicable; the court holding that an assessment according to frontage was not unconstitutional. *White v. People,* 94 Ill. 604. In *Peay v. Little Rock,* 32 Ark. 31, we find the only case which holds, under a constitutional provision similar to our own, that an assessment according to frontage is not a lawful assessment. This case was strongly relied upon in the argument to sustain the appellants' point, but an investigation of it shows

that the supreme court of that state based its decision mainly upon the older cases in Illinois and Wisconsin, some of which, as we have seen, have since been overruled in the states where they were made; and the argument in *Peay v. Little Rock* is so clearly, as we think, based upon the theory that there can be no valid local assessment, that its value as an authority is destroyed.

Section 9, art. 7 of our constitution is as follows:

"Sec. 9.　The legislature may vest the corporate authorities of cities, towns and villages with power to make local improvements by special assessment or by special taxation of property benefited.　For all corporate purposes, all municipal corporations may be vested with authority to assess and collect taxes, and such taxes shall be uniform in respect to persons and property within the jurisdiction of the body levying the same."

The discussion of this identical section in the constitution of Illinois, found in the case of *White v. People, supra,* is so thorough and full that it is not necessary for us to enter upon a further examination.　In this case the legislature has seen fit to leave the matter of determining in what mode street assessments shall be levied to the people of the city of Seattle, and they have chosen "frontage" as their system.　Concerning this method, Cooley on Taxation (page 644, 2d ed.), says:

"In many instances　.　.　.　the legislature has deemed it right and proper to take the line of frontage as the most practical and reasonable measure of probable benefits, and making that the standard, to apportion the benefits accordingly.　Such a measure of apportionment seems, at first blush, to be perfectly arbitrary, and likely to operate in some cases with great injustice; but it cannot be denied that, in the case of some improvements, frontage is a very reasonable measure of benefits, much more just than value could be, and perhaps approaching equality as nearly as any estimate of benefits made by the judgment of men. However this may be, the authorities are well united in the

conclusion that frontage may lawfully be made the basis of apportionment."

Adopting these views, we do not see why we should disturb the charter provisions.

2. A general demurrer was sustained to the complaint in this case in the court below, and the appeal is from a judgment against the plaintiff entered thereon. The complaint shows that the authorities of the city of Seattle had, after proper proceedings, ordered the improvement of Broadway from the north side of Yesler avenue to De Forrest street by grading and constructing sidewalks on both sides of the same, and that they were about to issue certain bonds for the cost of the improvement, under the terms of the charter. The charter (art. 8, § 8) provides:

"There shall be two modes of making payment for such local improvements, to wit, 'immediate payment' and 'payment by bonds,' and the council shall, in the ordinance providing for such improvement, declare in which mode such payment shall be made. The mode to be adopted shall be by payment by bonds, except in case the owners of more than three-fifths of the number of the front feet of the property fronting on such street in the district shall petition for the other mode, at or before the passage of such ordinance, in which case the council shall adopt the mode petitioned for."

And § 9 reads:

"If 'payment by bonds' is to be made for such improvement, then, and in such case, each estimate and roll shall be made and returned, and corrections made, and the notice given, as in the eighth section hereinabove provided, and the cost and expense of the improvement shall be assessed against the lots and parcels of land as in said section declared, payment for the crossing to be made as therein stated, and a copy of such roll filed with the city treasurer. But the ordinance shall further declare, on making such levy, that the sum charged against each lot and parcel of land may be paid in not more than ten equal annual payments, with interest upon the whole sum so charged at the

rate of seven per cent. per annum, the interest to be paid annually; and the city treasurer shall proceed to collect the amount due each year in the same manner as provided for collections in section eight hereof; and, in all cases of such payment by bonds, the city council shall issue the bonds of the city for the whole estimated cost of such improvement, less the costs of such crossings, and the amount assessed against lands of the United States, the State of Washington, state university, county of King, city of Seattle, or any school district. Such bonds shall be called 'Local Improvement Bonds, District No. —, of the City of Seattle;' shall be payable not more than ten years after date, with interest at a rate not exceeding six per cent. per annum, payable semi-annually at the office of the city treasurer. Such bonds shall be sold after thirty days' public notice thereof given, to the highest bidder therefor, but in no case shall such bonds be sold for less than par; and the proceeds shall be applied in payment of such improvement, the principal and interest of which bonds shall be paid by the city from proceeds of such local assessment, but the city shall be liable for the payment of both principal and interest; and all funds raised in each improvement district, as well as funds borrowed therefor, shall be paid into a fund for such district, to be called, 'Local Improvement Fund, District No. —, of Seattle.'"

As was premised, the city of Seattle has already passed the limit of one and one-half per cent. of her indebtedness, based upon the assessment roll of August 30, 1890, and no vote has been taken authorizing the increase of her indebtedness. The city council, by ordinance No. 1696, has provided for the issuance of Broadway improvement bonds in the sum of $17,812.50; and the appellants contend that the city has no power, without a vote of authorization, to issue such bonds, for the reason that when issued they will constitute evidences of primary indebtedness of the city. The ordinance (§ 5) provides:

"The principal and interest of such bonds shall be paid by the city from the proceeds of such local assessments, but the city shall be liable for the payment of both princi-

pal and interest if it fails or neglects to collect said assessments, or fails or neglects to collect sufficient to pay the principal or interest on said bonds when they fall due."

For the city, it is claimed that the bonds when issued would not constitute primary indebtedness of the corporation, for the reason that they are payable out of the fund to be created under the terms of the charter, and that the ordinance makes the city liable only in case of its failure or neglect to collect the assessment, or to collect sufficient to pay the principal and interest of the bonds when they fall due. The appellant must succeed in his contention because the ordinance does not comply with the charter. The last clause of § 9 is, "and the city shall be liable for the payment of both principal and interest;" and the council has no power to issue a bond which does not provide for a liability equal in degree with that provided by the charter.

3. The main question, however, is whether in view of the city's indebtedness already exceeding one and one-half per cent., it can issue these bonds without a vote of the people. It is a rule established by many authorities, that when a municipal corporation is about to order improvements of this class it may do so without making itself primarily liable for the cost thereof. The city of Seattle has already done so to a large extent, and this court has held that the unpaid warrants issued by it, drawn upon and payable out of special assessment funds, do not constitute a part of its municipal indebtedness, within the meaning of the constitution (*Baker v. Seattle, ante,* p. 576), but it is competent for such a corporation to make itself primarily liable for such improvements, and to make their cost a part of its debt. In this instance the language of the charter is too clear for construction. It is evident therefrom that its framers intended to give a degree of strength and stability to improvement bonds by pledging the faith of

the city for their payment in the first instance. The bond-holder, under this charter, need look only to the city for the payment of his principal and interest; the city is to be his debtor, not the property within the district, nor the owner of the land. Upon this point learned counsel cited us to a line of authorities from the State of Indiana, and sought to rely upon them in support of his position, but an examination of the cases fails entirely, we think, to uphold him. The case of *Quill v. City of Indianapolis*, 124 Ind. 292 (23 N. E. Rep. 788), is the latest of the cases cited, and we shall examine that case, as well as the law upon which it was based, briefly. The constitution of that state (article 13) provides:

"No political or municipal corporation in this state shall ever become indebted, in any manner, or for any purpose, to an amount in the aggregate exceeding two per centum on the value of the taxable property within such corporation, to be ascertained by the last assessment for state and county taxes previous to the incurring of such indebtedness; and all bonds or obligations in excess of such amount, given by such corporation, shall be void."

It was conceded that the bonded indebtedness of the city of Indianapolis exceeded the limit fixed by the constitution, and the question was whether it could, under the act of March 8, 1889, continue to issue improvement bonds; and the court held that, under the statute governing the issuance of the bonds proposed, they would not constitute a portion of the city's indebtedness, but would be valid obligations. But, turning to the statute in question, we find that no liability whatever was laid upon the city, even by its failure, neglect or refusal to collect the annual installments; but that the owner or holder of the bonds was given the right to foreclose the lien of the assessment upon the assessed property as a mortgage would be foreclosed in any court of competent jurisdiction, and for that purpose the bonds when issued were declared to transfer to the owner

thereof all the right and interest of the city in and to the assessment and the lien thereby created. The effect of this statute seems to have been to make of each assessment district a *quasi* corporation, whose agent for the making of the improvement, the creation of the lien, and the issuance of the bonds was the city; but after the issuance of the bonds the city had no duty to perform other than that of paying over to the bond-holders the money which it might receive from time to time. This, it will be seen, is a case very broadly to be distinguished from the one at bar, and renders the authority of the Indiana case of no force. The case of the *United States v. Ft. Scott*, 99 U. S. 152, is one where the State of Kansas made a provision in the charter of cities of the second class, within which was the city of Ft. Scott, almost identical with that of the charter of the city of Seattle; and it was there held that the liability of the city was absolute without reference to the fact that it was authorized to levy special assessments for the payment of its improvement bonds, and intended, as a fact, that the bonds should be paid out of the assessments when collected.

Incidental to the further facts of this case, it appears that the appellant contends that the sum of $955,000 of bonded indebtedness, which was incurred by the city of Seattle on the 20th day of August, 1890, for water and sewerage purposes, should in some way affect the question of the issuance of bonds in this case; but this claim is not warranted. The city was authorized by the act of February 26, 1890, to become indebted for the purpose of furnishing itself with water and sewerage and light plants in a sum equal to five per cent. of its assessment. This $955,000, being issued for the special purposes under which the city is authorized by § 6, art. 8 of the constitution, to become indebted in a sum equal to five per cent. in addition to five per cent. of indebtedness authorized for general purposes, is not to be considered as constituting a

part of the general indebtedness of the city, inasmuch as its assessment in 1890 is shown to have been upwards of $26,000,000, which would allow it a general indebtedness of upwards of $1,300,000, and a special indebtedness for water, sewers and lights of as much more.

Again, it is charged that the Broadway improvement will exceed an expenditure of $5,568.50 for the cost of the improvement at the intersection of cross streets, and therefore will add that much more to the city's indebtedness, but, so far as appears, the city may intend to pay that sum out of its current revenues, which will not, therefore, increase its indebtedness, in a constitutional sense, to that extent. If so, there is no objection on that ground to the improvement.

The judgment is reversed, and the cause remanded for further proceedings in accordance with this opinion.

ANDERS, C. J., and SCOTT, HOYT, and DUNBAR, JJ., concur.