STATE, *ex rel.* ED. BIGHAM *et al.* v. W. W..POWERS,
County Judge, *et al.* *

'(*Jackson.* April Term, 1911.)'

1. CONSTITUTIONAL LAW.   A drainage statute whose title
   provides for assessment and collection and manner of obtain-
   ing funds for the improvement, and whose body provides a
   system of taxation, to be exercised by the drainage districts,
   without limit as to rate or frequency, is not unconstitutional
   -- as embracing a subject in its body not included in its title.

   Where a drainage law (Acts 1909, ch. 185) is entitled "An act
   to provide for the establishment of levee and drainage dis-
   tricts, for the purpose of the draining and reclamation of wet
   and swamp lands and lands subject to overflow in the State,
   and prescribing the method for so doing, and providing for the
   assessment and collection of the costs and expenses of such
   improvements, and the manner of obtaining the means or
   funds therefor," even though such act be construed to provide
   in its body a system of taxation, to confer on the several drain-
   age districts the power of taxation, and give to such districts
   unlimited power as to rate or frequency of taxation, the stat-
   ute is not unconstitutional as containing in its body, in this
   particular, matters not embraced in its title, for all these
   matters are fairly included within the clause of the title as
   to assessing and collecting and providing the costs and ex-
   penses and funds for the work.   (*Post, pp.* 562-564.)

Acts cited and construed:   Acts 1909, ch. 185.

Constitution cited and construed:   Art. 2, sec. 17.

---

*Procedure for establishment of drains and sewers, see note
in 60 L. R. A., 161.

2. **SAME.** Title of a statute providing for establishment of levee
   and drainage districts and for a method for so doing author-
   izes a provision in its body for creation of one drainage dis-
   trict within another.

Where a drainage law (Acts 1909, ch. 185) is entitled "An act
to provide for the establishment of levee and drainage dis-
tricts, * * * and prescribing the method for so doing,"
etc., it is entirely appropriate for the body of the act to con-
tain a provision for the establishment of a drainage or levee
district to be created within a drainage or levee district; for
such a provision is not a matter distinct and foreign to the
title. (*Post, pp.* 564, 565.)

Acts cited and construed: Acts 1909, ch. 185.

Constitution cited and construed: Art. 2, sec. 17.

3. **SAME.** Title of a statute providing for establishment of levee
   and drainage districts and for a method for so doing author-
   izes a provision in its body for establishment thereof by mu-
   tual agreement, when.

Where a drainage law (Acts 1909, ch. 185) is entitled "An act
to provide for the establishment of levee and drainage districts,
* * * and prescribing the method for so doing," etc., it is
entirely appropriate for the body of the act to contain a pro-
vision authorizing the owners of land requiring combined
drainage to provide by mutual agreement for the establish-
ment of drainage districts, with the power given to the other
districts; for such provision only undertakes to prescribe a
method for establishing drainage districts, namely, "by mu-
tual agreement," and is covered by the title or caption, and
is entirely harmonious with the other parts of the act. (*Post,
pp.* 564, 565.)

Acts cited and construed: Acts 1909, ch. 185.

Constitution cited and construed: Art. 2, sec. 17.

4. **SAME. Title of a statute providing for establishment of levee and drainage districts and for funds to pay for the improvements authorizes a provision in its body for exercise of eminent domain.**

Where a drainage law (Acts 1909, ch. 185) is entitled "An act to provide for the establishment of levee and drainage districts, and prescribing the method for so doing, and providing for the assessment and collection of the costs and expenses of such improvements," etc., a provision in the body of the act for the exercise of the right of eminent domain in the establishment of these districts is germane to the title, and also to the other provisions of the act, and, therefore, does not render the act unconstitutional. (*Post, pp.* 565, 566.)

Acts cited and construed:   Acts 1909, ch. 185.

Constitution cited and construed:   Art. 2, sec. 17.

5. **SAME. Title of statute providing for establishment of levee and drainage districts and prescribing the method for so doing authorizes provision in its body requiring the county to bridge drainage ditches.**

Where a drainage law (Acts 1909, ch. 185) is entitled as set out in the preceding headnote, a provision in the body of the act requiring the county to build bridges when necessary over drainage ditches is clearly included in that clause of the title as to the methods to be used in establishing the levee and drainage districts. (*Post, pp.* 565, 566.)

Acts cited and construed:   Acts 1909, ch. 185.

Constitution cited and construed:   Art. 2, sec. 17.

6. **SAME. None of said provisions treated in the preceding headnotes are incongruous with the title of the act or with each other.**

All of the matters urged against the constitutionality of said act are determined against such contention, and held not to be incongruous with the title of the act or with each other, but

State, ex rel., v. Powers.

that they are all related to each other and fall well within the scope of the title. (*Post, pp.* 564-566.)

Acts cited and construed: Acts 1909, ch. 185.

Constitution cited and construed: Art. 2, sec. 17.

7. **SAME. Special assessments for establishment of levee and drainage districts are not taxes within the meaning of the constitution, and may be made or levied according to benefits instead of value of land.**

The special assessments authorized by the drainage law (Acts 1909, ch. 185, sec. 11) to be made for the payment of the costs and expenses of the establishment and construction of levee and drainage districts, and to be apportioned and levied upon or against each piece of land within the drainage district according to the benefits accruing thereto by reason of such improvements, are not taxes within the meaning of the constitutional provision (art. 2, sec. 29), giving the legislature power to authorize counties and incorporated towns to impose taxes for county and corporation purposes, respectively, in such manner as may be prescribed by law, and requiring all property to be taxed according to value, etc.; and, therefore, such assessments may, under authority of statute, be made or levied against each piece of land,. not according to its value, but according to the benefit it may receive from the establishment of the levee and drainage district. (*Post, pp.* 562, 563, 566-571.)

Acts cited and construed: Acts 1909, ch. 185, sec. 11.

Constitution cited and construed: Art. 2, sec. 29.

Case cited and approved: Arnold v. Knoxville, 115 Tenn., 195.

8. **SAME. Statute authorizing preliminary expenses of establishing levee or drainage districts to be paid out of general county funds, to be repaid out of collected assessments, is not unconstitutional as the lending of the county's credit; because it is**

State, ex rel., v. Powers.

not the lending of the county's credit, and, even if it were, it is for a county purpose, and may be done without an election.

The provision of the drainage law (Acts 1909, ch. 185, sec. 39) that the preliminary expenses for the organization and establishment of a levee or drainage district may be paid out of the general county funds, to be refunded to the county out of collections of assessments on the lands benefited; and, if not so repaid, then to be adjudged against and collected out of the bonds of the petitioners applying for the establishment of such district, is not a provision for the lending of the credit of a county in violation of the constitutional inhibition (art. 2, sec. 29) against the giving or lending of the county's credit to or in aid of any person, company, association, or corporation, except upon the assent of three-fourths of the votes cast, by the qualified voters of the county, in an election held to determine the question, but is rather a provision authorizing counties to appropriate a portion of their general funds for a newly sanctioned county purpose; but even if the statute be construed as providing for the lending of the county's credit, it is not, for that reason, unconstitutional, because the organization and establishment of such districts is a county purpose within the rule that a county's credit may be loaned for county purposes by the action of the quarterly court, without submission of the question to an election by the qualified voters. (*Post, pp.* 572, 573.)

Acts cited and construed: Acts 1909, ch. 185, sec. 39.

Constitution cited and construed: Art. 2, sec. 29.

Cases cited and approved: Lauderdale Co. v. Fargason, 7 Lea, 153; Shelby Co. v. Exposition Co., 96 Tenn., 653; Burnett v. Maloney, 97 Tenn., 699.

9. SAME. Statute *authorizing commissioners* under the appointment, direct supervision, and control of the county court to make special assessments for drainage districts is not unconstitutional as the delegation of the taxing power to bodies other than the county or a municipal corporation.

State, ex rel., v. Powers.

The provision in the drainage law (Acts 1909, ch. 185, sec. 11), authorizing the commissioners appointed by the county court, wholly as agents of the county, to levy the special assessments necessary for the establishment and maintenance of levee and drainage districts, to be made under the direct supervision and control of the county court, to which the said commissioners are required to report, and under whose direction they proceed, is not a delegation of the taxing power to a body of persons other than a county or a municipal corporation, in violation of the constitutional provision (art. 2, sec. 29) authorizing the delegation of the taxing power to the several counties and incorporated towns, because (1) these special assessments are not taxes within the meaning of the constitution, and (2) the court clearly intimates, without expressly deciding the question, that the taxing power, may be delegated to other county agencies than the quarterly court. (*Post, pp.* 573-576.)

Acts cited and construed: Acts 1909, ch. 185, sec. 11.

Constitution cited and construed: Art. 2, sec. 29.

Cases cited and approved: Cannon Co. v. Hoodenpyle, 7 Humph., 145; Newman v. Scott Co., 5 Sneed, 700; Arnold v. Knoxville, 115 Tenn., 195.

Case cited and distinguished: Lipscomb v. Dean, 1 Lea, 546.

10. **SAME. Statute authorizing special assessments for levee and drainage districts is not unconstitutional as taking property without just compensation and without due process of law.**

The drainage law (Acts 1909, ch. 185), authorizing special assessments against the land benefited, for the purpose of paying for the establishment and maintenance of levee and drainage districts, is not unconstitutional as authorizing the taking of property without just compensation and without due process of law. (*Post, pp.* 576, 577.)

State, ex rel., v. Powers.

Acts cited and construed:   Acts 1909, ch. 185.

Constitution cited and construed:   Art. 1, sec. 21.

Cases cited and approved:   Arnold v. Knoxville, 115 Tenn., 195;
French v. Asphalt Co., 181 U. S., 324; Cain v. Davie, 86 N. C., 8.

11. **SAME.** Statute authorizing drainage districts is not uncon-
stitutional as arbitrary class legislation because it exempts
Reelfoot Lake from its operation.

The drainage law (Acts 1909, ch. 185), authorizing the establish-
ment of levee and drainage districts for the drainage and recla-
mation of wet and swamp lands, is not unconstitutional as
creating an unnatural, arbitrary, and capricious classification
or exemption by the provision contained in its fortieth sec-
tion exempting Reelfoot Lake from the operation of the statute,
because such lake is a navigable water in the ordinary sense,
a great game and fish preserve, with many public uses, giving
the public an interest in its preservation so as to prevent its
drainage, and, on account of its such characteristics, it fur-
nishes a sound, reasonable, and natural basis for such classi-
fication between it and the swamp lands of the State. (*Post,*
*pp.* 577-579.)

Acts cited and construed:   Acts 1909, ch. 185, sec. 40.

Constitution cited and construed:   Art. 11, sec. 8,

Cases cited and approved:   Stratton v. Morris, 89 Tenn., 497;
Harbison v. Iron Co., 103 Tenn., 421; State v. Brewing Co., 104
Tenn., 215; Webster v. Harris, 111 Tenn., 668.

12. **SAME.** Statute authorizing special assessments for drainage
districts is not unconstitutional as the taking of private prop-
erty for either a public or private use.

The drainage law (Acts 1909, ch. 185), authorizing the establish-
ment of levee and drainage districts, and special assessments
on the land therein and thereby benefited to pay for the con-
struction and maintenance of the same, is not unconstitutional

as taking or authorizing the taking of private property for private uses, contrary to the implied prohibition of the constitution, because (1) there is not a taking of property in the constitutional sense, and (2) the taking is not for a private purpose, but for a county purpose and a public purpose. (*Post*, p..579.)

Acts cited and construed:    Acts 1909, ch. 185.

Constitution cited and construed:    Art. 1, sec. 21.

13. SAME. Statute authorizing special assessments for levee and drainage districts is not unconstitutional in imposing such burden upon homesteads therein; question reserved, with expression of opinion.

The drainage law (Acts 1909, ch. 185) authorizing special assessments on the land benefited by the establishment and maintenance of levee and drainage districts to pay for the costs and expenses of the same is not unconstitutional because the assessment may be levied against the homestead and its collection enforced against the homestead, for the reason that the homestead is not exempt from debts contracted for improvements thereon; but the court reserves the question whether the improvement resulting from the establishment and maintenance of a levee and drain of district is an improvement within the meaning of the constitution, for which the homestead would be liable, but clearly expresses a strong opinion that the homestead is not exempt from such assessments for such improvements.    (*Post*, *pp.* 579-581.)

Code cited and construed:    Sec. 3799 (S.); sec. 2935 (M. & V.); sec. 2114a (T. & S.).

Acts cited and construed:    Acts 1909, ch. 185.

Constitution cited and construed:    Art. 11 ,sec. 11.

Cases cited and approved:    Dickinson v. Mayer, 11 Heisk., 516; Guinn v. Spurgin, 1 Lea, 228; Nichol v. Davidson Co., 8 Lea, 389; Fauver v. Fleenor, 13 Lea, 623; Flatt v. Stadler, 16 Lea,

State, ex rel., v. Powers.

371; McLean v. Lerch, 105 Tenn., 693; McBroom v. Whitfield, 108 Tenn., 422.

14. **NAVIGABLE STREAMS. Statute authorizing levee and drainage districts is interpreted as not undertaking to authorize interference with navigable waters within the control of congress.**

The drainage law (Acts 1909; ch. 185) authorizing the establishment of levee and drainage districts for the drainage and reclamation of wet and swamp lands does not undertake to authorize any interference with the free and public use of navigable waters over which congress has control, and does not attempt to confer upon the county courts the authority to change or alter such navigable waters; and if the question was doubtful, the statute would be given that interpretation which would save it, rather than one which would destroy it. (*Post, p.* 581.)

Acts cited and construed. Acts 1909, ch. 185.

---

FROM GIBSON.

---

Appeal from the Chancery Court of Gibson County.— COLIN P. MCKINNEY, Chancellor.

COOPER & CLARK, DEASON, ELDER & HOLMES, for complainants.

WADE, NICHOLS & WADE, for defendants.

124 Tenn.—36

MR. JUSTICE GREEN delivered the opinion of the Court.

This is a *mandamus* suit, brought in the chancery court of Gibson county, to compel the county judge of that county to issue a warrant to pay for certain preliminary expenses incurred in connection with the proposed formation of a drainage district. This expenditure was authorized by the Gibson county quarterly court, under the authority of chapter 185 of the Acts of 1909.

The resolution appropriated $2500 out of the general county fund for the purpose, and directed the county judge to draw warrants for said expenses, which he refused to do.

A demurrer was interposed by the county judge, which challenged the constitutionality of the legislative act under which the county court proceeded, and from a decree overruling his demurrer the county judge has appealed to this court.

As stated, the act assailed is chapter 185, Acts of 1909, known as the "Drainage Law." Owing to its length, the entire act cannot be set out in this opinion, but only such portions quoted as are necessary to explain the points urged against it.

The objections to the act are made by demurrer, and the several grounds of demurrer correspond with the assignments of error here, and will be considered in the order made.

The general purposes of the act are concisely stated in the caption, as follows:

"An act to provide for the establishment of levee and

State, ex rel., v. Powers.

drainage districts, for the purpose of the draining and reclamation of the wet and swamp lands and lands sub- ject to overflow in the State, and prescribing the method for so doing, and providing for the assessment and collec- tion of the costs and expenses of such improvements, and the manner of obtaining the means or funds therefor."

It will be seen that the caption indicates an act to pro- vide for the establishment of drainage districts, with di- rections as to the methods to be used, with a provision for assessing and collecting the costs and expenses of the work, and a further provision as to the "manner of ob- taining the means or funds therefor."

The first ground of demurrer is that the act violates section 17, art. 2, of the constitution, providing that "No bill shall become a law which embraces more than one subject, that subject to be embraced in the title."

The appellant sets out under seven heads the different and distinct matters which he alleges are contained in the act, and which he argues are incongruous with the title and with each other.

The first three matters mentioned, which are said to be distinctive and without the scope of the title, are:

(1)  "The body of the act provides a system of taxa- tion, and not only this, but provides for a basis of taxa- tion according to the benefits bestowed."  See section 11 of said act.

(2)  "Not only this, but the districts created under this act are to have the power of taxation without regard to the quarterly court."  See section 11.

(3) "The power of taxation under this act is unlimited as to rate or the frequency of the levy." See section 11.

Section 11 of the act will be quoted and referred to later in the progress of this opinion, and it will then be seen that we do not agree that the act, under a proper construction, can be given the meaning that counsel ascribes to it in the three paragraphs just above quoted from his brief. Considering, however, that the act means what he says, as we may do for the purpose of disposing of the particular constitutional objection here made, still we are not able to perceive that three distinct subjects are here treated of, or that any of the matters mentioned are incongruous with the caption of the act or with each other.

If the act did provide for a basis of taxation, and did confer on the several districts the power of taxation, and did give such districts unlimited power as to rate or frequency, nevertheless it could be said of none of these matters that they were not fairly included within that clause of the title as to assessing and collecting and providing the costs and expenses and funds for the work.

It is next said that under the fourth heading this act provides for a drainage or levee district to be created within a drainage or levee district, and so on; and this is urged as a distinct and foreign matter to the title. The language of the caption is that the act is to provide for the establishment of "levee and drainage districts," and it is not improper that a provision such as the one criticized should be enacted under that part of the title

quoted. In addition, it is also said in the caption that the act shall be one "prescribing the method" for establishing these districts, and it is entirely appropriate, under the last clause of the caption, to enact that one district may be established within another.

The fifth distinct matter supposed to be included in the act is that portion providing that "the owners of land which requires combined drainage may provide by mutual agreement for the establishment of drainage districts, with the power given to the other districts." What has been said in disposing of the fourth objection just above is applicable here. This part of the statute only undertakes to prescribe a method by which a drainage district may be established, to wit, "by mutual agreement;" and this is covered by the caption, and is entirely harmonious with the other portions of the act.

It is next said, under the sixth head, that, as appellant construes the act, it provides for the exercises of the right of eminent domain in the establishment of these districts. If this construction be conceded, it is, we think, germane to the title, and also to the other provisions of the act.

It is argued, under the seventh head, that the act provides that the county shall build a bridge, when necessary, over any drainage ditch. This provision is clearly included in that clause of the caption as to the methods to be used in establishing these districts.

So that, upon consideration of all the different matters alleged to be inharmonious and incongruously included

in this act, we are of the opinion that they are not subject to such criticism, but, on the contrary, they are all related to each other, and fall well within the general scope of the act as indicated by its title. The act does not violate section 17, art. 2, of the constitution in any of the particulars urged by the appellant.

The second ground of demurrer is that the act violates section 29, art. 2, of the constitution, providing that "the general assembly shall have power to authorize the several counties and incorporated towns in this State to impose taxes for county and corporation purposes, respectively, in such manner as may be prescribed by law; and all property shall be taxed according to value, upon the principle established in regard to State taxation."

The provision of the act which it is said violates the above clause of the constitution is section 11 of the act, which provides for the assessment and apportionment of the costs and expenses of the work upon each piece of land, according to the benefits accruing to that land be reason of these public improvements.

Section 11 of the act is as follows:

"Section 11. Be it further enacted, that when the drainage or levee district, or other improvements herein provided for, shall have been located and established as provided for in this act, the county court shall appoint three commissioners, one of whom shall be a competent civil engineer, and two of whom shall be freeholders of the county, not living within the levee or drainage district, and not interested therein, or in a like question, nor related to any party whose land is affected thereby;

and they shall, as soon as practicable after their appointment, and after being duly sworn to perform their duty faithfully and impartially to the best of their ability, inspect and classify all the lands benefited. by the location and construction of such drainage or levee district in a graduated scale of benefits, naming the tract or tracts of each owner and so classifying the same, each tract to be numbered according to the benefit received, as below provided, by the proposed improvement; and they shall make an equitable apportionment and assessment of the costs, expenses, cost of construction, fees and damages assessed for the construction of any such improvement, and make report in writing thereof to the county court. In making said estimate and apportionment, the lands receiving the greatest benefit shall be marked on scale of one hundred, and those benefited in a less degree shall be marked with such percentage of one hundred as the benefit received bears in proportion thereto. This classification, when finally established, shall remain as a basis for all future assessments connected with the objects of said drainage or levee district, unless the county court, for good cause, shall authorize a revision thereof. In making such classification, said commissioners are authorized to divide the land of one owner lying in one body into more than one tract, and classify each subdivision thereof, if they are of opinion that portions of such entire tract will be more benefited than other portions, and especially when such entire tract is a large one, and that it will be more equitable and just to so classify it in subdivisions.

"In the report of such commissioners they shall specify each tract of land by reasonable description and the ownership thereof as the same appears on the tax books of the county or as the same has been previously adjudged in the proceeding, and the court shall cause notice to be served upon each person whose name appears as the owner, and upon any person in actual occupancy of the land, which notice shall state the amount of special assessments apportioned to each owner on each tract or lot, the day set for hearing the same before the court; that all objections thereto must be made in writing and filed with the county clerk on or before noon of the day set for hearing; and said notices shall be signed by the county clerk and served at least five days before the time set for the hearing. If any such owner be a nonresident of the State, or his name or residence is unknown and cannot be ascertained after diligent inquiry, then service of such notice upon the resident agent or attorney of such person shall be sufficient; if there be no such resident agent or attorney of such person, then the assessment may be made without notice just as taxes are assessed without notice in such cases. When the day set for hearing has arrived, and the hearing is not continued by the court for good reason, as it may be, and when the hearing is had, the county court shall proceed to hear and determine all objections made and filed to said report, and may increase, diminish, annul, or affirm the apportionment and assessment made in such report, or in any parts thereof, as may appear to the court to be just

State, ex rel., v. Powers.

and equitable; but in no case shall it be competent to show that the lands assessed would not be benefited by the improvement; and when such hearing shall have been had, the county court shall assess such apportionment so fixed by it upon the lands within such levee or drainage district. If the first assessment made by the court for the original cost of any improvement as provided in this act is insufficient, the court may make an additional assessment in the same ratio as the first.

"If for any reason the court annuls *in toto,* or sets aside such report of the commissioners, it shall order them to make a new report, or shall remove them and appoint new commissioners to act as in the first instance, if desired by the parties concerned."

The objection here made is that these assessments are a tax, and are not made according to value, as the constitution provides.

This objection at a former period of judicial history in this State would have been fatal. Acts similar to the one in question here, providing for like assessments, have by this court, in earlier times, been held to be in contravention of the constitution.

The court, however, has in a recent holding overruled the former cases, and held that such assessments are not taxes within the meaning of the constitution.

In the case of *Arnold* v. *Knoxville,* 115 Tenn., 195, 90 S. W., 469, 3 L. R. A. (N. S.), 837, this entire subject is discussed at much length, and all the authorities there reviewed, in an opinion by the late Mr. Justice Wilkes.

In that case there was a statute providing for the creation of an improvement district by a municipal corporation within the corporate limits, and providing for special assessments on the property lying therein, abutting thereon, or adjacent thereto.

It was held by this court that this act was valid and constitutional, the same objection being made to it that is urged here. The court said:

"While special assessments are in the nature of taxation, still they are not taxation for general governmental purposes in the sense provided for in the constitution in many respects. Some of these differences are pointed out in the cases. Thus exemption which applies in cases of governmental taxes does not extend to special assessments. Special assessments do not recur annually or at stated periods, but are imposed only as occasion requires. Special assessments are levied alone upon real estate and not upon personal property. There are numerous distinctions pointed out in the cases. 25 Am. and Eng. Enc. Law, 1168, 1169, and authorities there cited."

The court further said:

"Special assessments are based upon the theory that property assessed will be specially benefited above the benefits received by the public at large; and while the results may not be such as are anticipated, still the principle holds good. And it is likewise held that the burden may be apportioned between the public and the property benefited, and between the property owners themselves, according to actual benefits expected, or accord-

ing to value, or in some jurisdictions, according to area or frontage, as the legislature may direct.

"The most equitable plan of apportionment appears to be an assessment according to value and benefits received, and it has been held that in assessments based upon value, the worth of the improvements should be deducted." *Arnold* v. *Knoxville*, supra.

The conclusion reached by the court in this case was attained after a learned discussion at the bar and after a full consideration by the court, the members of which did not all concur in the result reached.

The authorities were all reviewed in this opinion, and we could add little here to what was there said.

Although the court was divided, the result of that case has been accepted generally, and has since been acted upon repeatedly by the legislature.

It is sufficient to say that we are satisfied with the conclusion reached in *Arnold* v. *Knoxville,* supra, and adhere to what was therein said by the majority of the court.

This being true, the plaintiff's second ground of demurrer was properly overruled by the chancellor. The assessments provided for by section 11 of this act are not taxes, within the meaning of the constitution, and it is not necessary that they should be made according to value, but it was competent for the legislature to provide that they should be levied against each piece of property according to the benefit that property may be held to derive from the establishment of the drainage districts.

It is also said that the act violates the latter portion of section 29, art. 2, of the State constitution, which provides:

"But the credit of no county, city or town shall be given or loaned to or in aid of any person, company, association, or corporation, except upon election to be first held by the qualified voters of such county, city or town and the assent of three-fourths of the votes cast at said election," etc.

It is argued that section 39 of the act violates this constitutional provision. Section 39 of the act is as follows:

"That the preliminary expenses of such levee or drainage district, ditch, drain or water course, improvement provided for by this act (not including contract for construction) may be paid by order of the quarterly county court of the county in which the lands lie of such improvement district, out of the general county funds, the same, if so paid, to be refunded to the county out of the assessments collected from the lands of such improvement district when so collected; and if not repaid, for any reason, then to be adjudged against and collected out of the bonds of the petitioners required by this act, and thus repaid to the county. If the quarterly county court should not see fit to order such preliminary expenses so paid, and the parties to whom such expenses may be owing are not willing to agree to wait till a fund for their payment can be provided by special assessments upon such districts, the county court by proper order

shall require the petitioner or petitioners to pay to the county court clerk a fund sufficient to pay such preliminary expenses. . . . ."

We do not think that this makes out a case of lending the credit of the county in the constitutional sense, but that it is rather the conferring of authority upon the counties to appropriate a portion of their general funds for a newly sanctioned county purpose. If it be conceded, however, that this is a lending of the county's credit, still we have no hesitancy in holding that the establishment of these drainage districts is a county purpose, and that a lending of the county's credit toward effecting that purpose may be validly done without any election being had. It is well settled in this State that a county's credit may be loaned for county purposes merely by the action of the quarterly court, and that no election is required. The matter is fully discussed in the case of *Shelby County* v. *Exposition Co.,* 96 Tenn., 653, 36 S. W., 694, 33 L. R. A., 717, and authorities there cited. See, also, *Burnett* v. *Maloncy,* 97 Tenn., 699, 37 S. W., 689, 34 L. R. A., 541; *Lauderdale County* v. *Fargason,* 7 Lea, 153.

The third ground of demurrer is that this act violates the constitution, in that it delegates the taxing power to a body of persons other than a county or a municipal corporation, in contravention of section 29, art. 2.

To sustain this proposition, counsel refer to the case of *Lipscomb* v. *Dean,* 1 Lea, 546, in which an act authorizing the directors of school districts to levy taxes

for school purposes was held to be void. It was said in that case that the only delegation of the taxing power permitted by the constitution was to counties and municipal corporations. We do not think that case is in point here.

As we read this act, there is no attempt to delegate this right of assessment to any other person or body except counties in which the districts are to be established. The commissioners are named merely as agents of the county, who are to act for the county in levying these assessments. But they act for the county alone, and not for themselves. The whole work of these commissioners is under the direct supervision and control of the county court of each county, to whom they have to report, and under whose direction they are required to proceed.

It is said, however, that the quarterly court has no supervision or control of these assessments, and that it is through the quarterly court alone that a county can act in regard to matters of taxation, or a matter like this.

The constitutions of 1834 and 1870 (article 2, section 29) provide that "The general assembly shall have power to authorize the several counties and incorporated towns in this State to impose taxes for county and corporation purposes, respectively, in such manner as shall be prescribed by law," etc.

It has not generally been supposed that the legislature in delegating the taxing power to a county, was compelled to select or designate the quarterly court as the

sole agency through whom the taxes might be levied. So far as we can find, this exact point has not arisen in any of the cases; that is to say, the decision of this question has not been necessary to the disposition of any of our reported cases. There are, however, several expressions of this court indicating that it has always been supposed that the legislature might select a county agency other than the county court to levy a tax.

In the case of *Justices of Cannon County* v. *Hoodenpyle,* 7 Humph., 145, the court, in discussing the foregoing constitutional provision, said:

"In pursuance to this power the legislature have by various statutes authorized and empowered the justices of the county courts of the several counties to exercise for county purposes this delegated power of taxation. The power itself is a portion of the fiscal or taxing power of the State delegated, as we have said, pursuant to the constitution, to the several counties. The agency indicated by law for the exercise of this delegated local power happened to be the justices of the county court; but the power itself is not judicial, and might have been confided to any other agency, or to the people of the counties themselves."

And again, in the case of *Newman* v. *Scott County,* 5 Sneed, 700, the court said in like connection:

"As taxation is the appropriate means of raising funds for the discharge of such debts, the power to impose taxes for such purposes has been conferred generally upon the justices of the county court."

There is an apparent recognition here of the power of the legislature to delegate the taxing power to other county agencies than the quarterly court, and, in fact, an intimation that the power had been so delegated.

We are furnished with no authority for the proposition that it is beyond the power of the legislature to delegate the taxing power to a proper county agency other than the quarterly court, and we would be slow to reach such a conclusion. This question, however, does not necessarily arise here. In *Arnold* v. *Knoxville,* as we have seen, this court held that these assessments were not to be treated as taxes within the meaning of section 29, art. 2, of the constitution. Therefore, there being no constitutional restrictions on the subject, we do not see how any valid objection couuld be urged against this legislative scheme for the levying and collection of these assessments.

The fourth ground of demurrer is: "The power of taxation conferred by said act is unreasonable and void, and gives the power of confiscation to the beneficiaries of this act, and it is violative of the constitution."

Although the appellant does not point his finger to the particular provision of the constitution which this portion of the act is supposed to violate, we assume that he refers to the constitutional inhibition against the taking of property without just compensation. Article 1, section 21.

This is another question that was settled in *Arnold* v. *Knoxville,* supra. This court reviewed the cases there,

and held that special assessments for improvements did not constitute a taking of property without just compensation and without due process of law, citing and approving *French* v. *Asphalt Co.*, 181 U. S., 324, 21 Sup. Ct., 625, 45 L. Ed., 879 *Cain* v. *Davie County*, 86 N. C., 8, and a number of other cases. In a new work on Taxation by Assessment, by Page and Jones (volume 1, section 110), the authors state that by the great weight of authority these provisions of the various constitutions as to just compensation are restrictions upon the power of eminent domain, and, therefore, "have no application to local assessments, which are a branch of the taxing power." A great number of cases are cited in support of this statement, from California, Connecticut, Georgia, Illinois, Indiana, Kentucky, Louisiana, New York, New Jersey, Massachusetts, Michigan, Mississippi, Missouri, Maryland, Ohio, Texas, Vermont, and Wisconsin.

The fifth ground of demurrer is that the act violates section 8, art. 11, of the constitution, in that it creates an arbitrary and capricious classification or exemption, and is, therefore, not the "law of the land." The particular section of the act to which his criticism is directed is section 40, as follows:

"Be it further enacted, that this act is not intended to apply to Reelfoot Lake and the waters thereof, or to authorize the draining of the same; and that this act shall not be construed to in any way authorized the draining of said lake."

124 Tenn.—37

It is urged upon us that the exemption of Reelfoot Lake from the operations of this statute is unnatural and arbitrary. With the utmost respect to learned counsel who make this contention, it seems to us that a mere statement of it suggests its own refutation.

This court has held, in the case of *Webster* v. *Harris*, 111 Tenn., 668, 69 S. W., 782, 59 L. R. A., 324, that Reelfoot Lake is navigable water in the ordinary sense; that it has many public uses; that the public have an interest in its preservation; and that it might not be drained.

There is, of course, a great difference between Reelfoot Lake and the swampy, marshy, water-covered lands which are proposed to be affected by this legislation. No one could be benefited by the continued existence of the ordinary swamp lands that are intended to be reclaimed by this act. They are valuable and useful for no purpose, but, on the contrary, are breeders of disease, pestilent insects, poisonous reptiles, and are a menace to the health of every neighboring community. Reelfoot Lake, aside from its uses as navigable water, is a great fish and game preserve. It furnishes a means of livelihood to many fishermen and others, and is the source of a large food supply for much of the country.

Surely it cannot be said that a discrimination and a distinction between Reelfoot Lake and these noisome swamps does not rest upon a sound and natural basis, and our cases are uniformly to the effect that, if a classification or exemption be reasonable and resting on a sound basis, it will be sustained. *State* v. *Schlitz Brew-*

*ing Co.,* 104 Tenn., 715, 59 S. W., 1033, 78 Am. St. Rep., 941; *Harbison* v. *Knoxville Iron Co.,* 103 Tenn., 421, 53 S. W., 955, 56 L. R. A., 316, 76 Am. St. Rep., 682; *Stratton* v. *Morris,* 89 Tenn., 497, 15 S. W., 87, 12 L. R. A., 70, in which last case is included a review of all those decided earlier.

There is a subsection of this ground of demurrer, in which it is said the act operates to take private property for private use, contrary to the implied prohibition of the constitution, and is, therefore, invalid.

In response, we refer to the former portion of the opinion, wherein we held that this was not a taking of property in the constitutional sense, and to the other portion, in which we held that the purpose was not a private purpose, but was a county purpose and a public purpose.

We have heretofore covered the objection made to the act in the sixth ground of demurrer.

The seventh ground of demurrer is that the act violates section 11, art. 11, of the constitution, with reference to homestead. It is contended that, under the provisions of this act, assessments may be levied against the homestead, and its collection enforced against the homestead, and that this violates the section of the constitution named.

The exact language of the constitution, after providing for the homestead, is:

"This exemption shall not operate against public taxes nor debts contracted for the purchase money of such homestead, or improvements thereon."

Under this language of the constitution, this court, pursuant to legislative enactment, has repeatedly held that the homestead might be sold for a debt or liability contracted in its purchase. Shannon's Code, section 3799; *McLean* v. *Lerch,* 105 Tenn., 693, 58 S. W., 640; *Dickinson* v. *Mayer,* 11 Heisk., 516; *Nichol* v. *Davidson County,* 8 Lea, 389; *Guinn* v. *Spurgin,* 1 Lea, 228; *Faucer* v. *Fleenor,* 13 Lea, 623 and other cases.

So, too, the statute and our decisions have given effect to the other constitutional provision, and established the law to be that the homestead might be sold for the satisfaction of any debt or liability incurred for improvements made thereon. Shannon's Code, section 3799; *McLean* v. *Lerch,* 105 Tenn., 693, 58 S. W., 640; *McBroom* v. *Whitfield,* 108 Tenn., 422, 67 S. W., 794; *Flatt* v. *Stadler,* 16 Lea, 371; *Dickinson* v. *Mayer* and *Nichol* v. *Davidson County,* supra.

While we think, for the present, at least, and until these lands are to some extent improved, this discussion is academic, for the reason that no homestead is likely to be composed of lands of this character, still we are clearly of opinion that the drainage of such land under the terms of this act is an improvement, within the meaning of the constitution, for which the homestead would be liable. In fact, we can conceive of no greater or more substantial improvement that could be made to such a homestead. Indeed, it is an essential improvement, without which the homestead would be valueless.

It is, therefore, perfectly competent for the legislature

to enact that a homestead composed of swamp lands shall be liable for improvements of this character.

The last objection urged against the act is that section 1 gives the county courts of the several counties power to change or widen any and all natural watercourses, and that this power is not limited to water courses having their sources and ends within the State. It is urged that there is nothing in this section to prevent the exercise of this power with reference to the Tennessee or Cumberland rivers, and that the legislature in this way put it within the power of the county court to interfere with the navigation of streams extending beyond the State. It is said that this is in violation of the federal laws.

We think the act has no such meaning as this one which is ascribed to it. Under the well-accepted canon of construction, we will give the act that interpretation which would save it, rather than one which would destroy it.

It was never in the mind of the legislature to confer upon the several counties, by this act, any power to interfere with the free use by the public of navigable waters over which congress has control. The legislature had no such power itself, and we will not presume that it undertook to confer such authority. The language of the act cannot be fairly so construed.

So that, after a careful review of the entire case, and a full consideration of all the objections made by the county judge to this act, we conclude that none of them are well taken, and the decree of the chancellor will be affirmed.