OBION COUNTY, FOR USE AND BENEFIT OF NORTH FORK
DRAINAGE DIST. NO. 2 *v.* MASSENGILL ET AL.

(*Jackson*, April Term, 1941.)

Opinion filed May 24, 1941.

Joseph L. Fry, of Union City, for complainant.

C. H. Cobb, of Union City, for defendants.

Mr. Justice Chambliss delivered the opinion of the Court.

The original bill was filed by Obion County for use of North Fork Drainage District No. 2 of Obion and Weakley Counties, against various owners of lands lying in this Drainage District, to enforce collection by foreclosure sales of drainage district taxes alleged to be delinquent. The questions presented on this appeal arise under a petition duly filed in this cause on July 11th, 1940, by Mrs. Ottis L. Cobb asserting ownership of a certain tract of land assessed for drainage taxes for the years 1936, 1937 and 1938 to E. A. Byrd as No. 405, containing 35 acres, being one of the tracts or lots sought to be foreclosed in the original bill, and praying that her superior title be decreed free from the lien for drainage taxes which was sought to be declared and enforced by the original bill. Petitioner alleged that this Byrd tract of 35 acres had been sold, on March 24th, 1938, by the Clerk and Master of the Court for delinquent State and County taxes and purchased by C. S. Luton, free from all liens and claims, and the sale to him confirmed; that thereafter the said Luton sold and conveyed this land to petitioner, Mrs. Cobb, who owns the same in fee.

This petition was heard by the Chancellor on an agreed statement of facts and sustained, and a decree entered adjudging Mrs. Cobb to be the owner of said land free from the liens for drainage taxes charged against it in the original bill. Obion County, for use of the Drainage District, appeals.

The two concluding paragraphs of the stipulation of facts on which the case was tried below thus clearly set forth the issues presented for determination:

"It is further stipulated and agreed that the sole issue between the complainants in this cause and the petitioner and defendant, Mrs. Ottis Cobb, is whether it was necessary under the law for the Court to order a reference

in said tax suit to ascertain what drainage assessments if any were past due and unpaid against the land, and whether the purchaser at said tax sale took the title free from any drainage assessments that might have been against the land.

"The complainant insists that the lien for drainage assessments still exists against the land, and the petitioner-defendant, Mrs. Ottis Cobb, insists that her title acquired through the purchaser of the land at the sale by the State and County for taxes is paramount and free from any lien of the drainage district for assessments of any kind."

The holding of the Chancellor was (1) that the State and county tax lien was a first and prior lien, and the drainage assessments were secondary to the State and county taxes; (2) that it was not necessary to order a reference in the State and county tax suit to ascertain the drainage assessments against the real estate; (3) that the sale to collect the State and county taxes conveyed a title free and unencumbered, and (4) that the purchaser, Luton, obtained a good title to the Byrd land at the tax sale, and Mrs. Cobb, who purchased from Luton, was vested with a fee simple title to said real estate, free from any liens.

The insistence made for the appellant Drainage District is, in substance (1) that because the Drainage District was not made a party to the suit to collect the State and County taxes, in which the sale was made, it was not bound thereby and its lien for drainage taxes remained on the land; and (2) because no reference was made in that cause for drainage taxes, the lien therefor was not discharged, invoking the statutes, Code Sections 1601, 1678, 1679, which provide for references for taxes when Court sales of land are made.

For appellee it is said (1) that the Drainage District,

as the holder of a subordinate and secondary lien to that of the State and County, was not a necessary party to the suit of the State and County to collect taxes; (2) that the proceeding was one *in rem* and was binding on all parties claiming an interest in or lien on the land affected; (3) that the County Judge, as *ex officio* chairman of the Directors of the Drainage District, Code Sections 4306, 4309 and, also, financial agent of the County and responsible for the bringing of suits for collection of State and County taxes through an attorney of his appointment, Code Section 1588, had both actual and constructive notice of the tax suit in which the sale was made; and (4) that the statutes invoked providing for references for taxes have no application to special assessments, which are not "taxes" within the meaning of this term as employed in the Code sections invoked, providing for references when Court sales are made; and, furthermore, that the failure of the Court to order and the Master to make such a reference does not defeat or impair the validity of a Court sale of land, the proceeds of the sale being substituted for the land.

We find no error in the decree of the Chancellor. In a very recent case it was re-affirmed that a tax sale is a proceeding *in rem* and that interested parties are bound by actual or constructive notice. *Collins* v. *Oliver*, 24 Tenn. App., 337, 144 S. W. (2d) 9; and it has long been settled that the lien of the State, county and municipality is superior to all others. *Dunn* v. *Dunn*, 99 Tenn., 598, 42 S. W. 259; *State* v. *Hill*, 87 Tenn., 638, 11 S. W., 610.

In an effort to facilitate the collection of taxes the Legislature has provided, Code Section 1609, Chapter 136, Acts of 1929, as follows:

"A tax deed of conveyance shall be an assurance of perfect title to the purchaser of said land, and no such

conveyance shall be invalidated in any court, except by proof that the land was not liable to sale for taxes or that the taxes for which the land was sold have been paid before said sale; and if any part of the taxes for which said land was sold is illegal or not chargeable against it, but a part is chargeable, that shall not affect the sale, nor invalidate the conveyance thereunder, unless it appears that before the sale the amount legally chargeable against the land was paid or tendered to the county trustee, and no other objection either in form or substance to the sale or the title thereunder shall avail in any controversy involving them.''

Looking to Code Section 1609 above quoted, it will be seen that but two grounds are prescribed on which a conveyance to a purchaser at a tax sale may be invalidated (1) that the land was not liable for the taxes, or (2) that the taxes had been paid. Neither of these complaints are made here, the stipulation being to the contrary.

It is quite apparent that this and other sections above cited providing for references, all found in Chapter 5 of the Code, relating to the collection and handling of taxes, have to do with State and county and sometimes municipal taxes, the superiority of the lien of which is clearly recognized.

We are of opinion that a determinative answer to the insistence of the Drainage District is that its claim is not one for ''taxes,'' within the meaning of the term as used in the Code sections invoked. Its claim is a lien of a special and subordinate nature, referred to quite frequently in distinction from ''taxes'' as special benefit assessments.

In *State ex rel.* v. *Powers*, 124 Tenn. 553, 137 S. W. 1110, 1113, Mr. Justice GREEN, speaking for the Court, definitely places Drainage District assessments in this

special class. The opinion quotes from *Arnold* v. *Knoxville*, 115 Tenn., 195, 90 S. W. 469, 3 L. R. A. (N. S.), 837, 5 Ann. Cas. 881, the following:

"While special assessments are in the nature of taxation still they are not taxation for general governmental purposes in the sense provided for in the Constitution in many respects. Some of these differences are pointed out in the cases. Thus exemption which applies in cases of governmental taxes does not extend to special assessments. Special assessments do not recur annually or at stated periods, but are imposed only as occasion requires. Special assessments are levied alone upon real estate and not upon personal property. There are numerous distinctions pointed out in the cases. 25 Am. & Eng. Enc. Law, 1168, 1169, and authorities there cited."

We had occasion to consider quite fully this distinction in *Knoxville* v. *Lee*, 159 Tenn., 619, 21 S. W. (2d), 628, 630, a case involving the application of our general tax limitation Act of 1885 to special paving assessments holding that these special assessments are not "taxes" within the meaning of the Act. *Arnold* v. *Knoxville, supra,* was cited. From Bouvier's definition we quoted that taxes "do not embrace local assessments." 2 Bouv. Law Dict., Rawle's Third Revision, p. 3220. We quoted and approved the following from *De Clercq* v. *Barber Asphalt Paving Co.,* 167 Ill. 215, 47 N. E. 267:

 "There is a clear and manifest distinction between a tax and a special assessment. A tax is imposed for a general or public purpose. It is levied for the purpose of carrying on the government. It is a charge on lands and other property which lessens its value, and in the proportion in which the owner is required to pay is his pecuniary ability diminished. This is the sense in which the term 'taxation' is used and understood. On the other hand, a

special assessment contains none of the distinctive features of a tax. It is assessed or levied for a special purpose, and not for a general purpose. It is not a charge on property which reduces its value. The assessment is made in the ratio of advantages accruing to the property in consequence of the improvement. In no case can the assessment exceed the advantages accruing to the property assessed. It is therefore regarded but an equivalent or compensation for the increased value the property will derive from the improvement the assessment is levied to discharge.''

See, also, *City of New London* v. *Miller,* 60 Conn., 112, at page 116, 22 A. 499; *Staley* v. *Medford,* D. C., 8 F. (2.), 314. Referring in the *Knoxville* v. *Lee* opinion to the case of *Zable* v. *Louisville Baptist Orphans' Home,* 92 Ky., 89, 17 S. W., 212, 13 L. R. A., 668, we quoted the headnote, reading, ''The word . . . 'taxes' does not include local assessments, unless there be something in the statute in which it is found to indicate such an intention,'' and commented as follows:

''In an opinion by Chief Justice HOLT, in which it is held that a provision in the charter of a corporation exempting its property from 'all taxation by State or local laws for any purpose whatever' does not exempt the corporation from local assessments for street improvements, the learned writer sustains the view expressed in the headnote quoted. Referring to many authorities, he quotes, among others, from Cooley on Taxation (2 Ed.), 650, the following: 'While these local assessments are laid under a taxing power, they are not taxes in the ordinary understanding of that term,' etc. He quotes Burroughs on Taxation, p. 461, to the effect that the word 'tax' or 'taxes' in a statute does not include local assessments unless there is language in the statute

which indicates such an intention. See *Austin* v. *Seattle,* 2 Wash., 667, 27 P. 557, and our recent case of *City of Athens* v. *F. R. Dodson et al.,* 154 Tenn., 469, 290 S. W. 36.''

In cases later than *Knoxville* v. *Lee* this Court has expressed like views on this question. *South Fulton* v. *Parker,* 160 Tenn., 634, 28 S. W. (2d), 639; *Knoxville* v. *Gervin,* 169 Tenn., 532, 89 S. W. (2d), 348.

It results (1) that if a necessary party, which we do not concede, the Drainage District had notice of the tax sale proceeding and is bound; and (2) that the statutory provision for a reference for taxes when land sales are made does not apply to the special assessment taxes levied by the Drainage District.

The decree is affirmed.