# SUPREME COURT OF TENNESSEE

### FOR THE

## EASTERN DIVISION.

### KNOXVILLE, SEPTEMBER TERM, 1914.

*(Continued from Vol. 130.)*

SMITH *et al.* v. CARTER *et al.*\*

*(Knoxville.* September Term, 1914.)

1. HIGHWAYS. Taxation. Delegation of power. Road improvement districts.

Acts 1913, 1st Ex. Sess., ch. 43, creating road improvement districts, violates Const., art. 2, sec. 29, providing that the general assembly shall have power to authorize the several counties and incorporated towns to impose taxes, etc., in that by section 7 of chapter 43 power of fixing the tax rate is conferred on road improvement district commissioners, who do not constitute a county or incorporated town. (*Post, pp.* 6, 7.)

Acts cited and construed: Acts 1913, ch. 43.

Constitution cited and construed: Sec. 29, art. 2.

Cases cited and approved: Lipscomb v. Dean, 69 Tenn., 546; Waterhouse v. Public 'Schools, 68 Tenn., 398; Id., 55 Tenn., 857; Maxey v. Powers, 117 Tenn., 381.

---

\*As to what boards or bodies the power of taxation may be delegated, see notes in 15 L. R. A. (N. S.), 61 and 32 L. R. A. (N. S.), 1078.

Smith v. Carter.

2. **TAXATION.** Delegation of power. Road improvement districts. Special taxes. Statutes.

Since special taxes are a form of taxation, power to levy special taxes for a road improvement district cannot be delegated to a district, in violation of Const., art. 2, sec. 29, delegating power to counties and incorporated towns. (*Post, p. 7.*)

Cases cited and approved: Arnold v. Knoxville, 115 Tenn., 195; State, ex rel., v. Powers, 124 Tenn., 553.

3. **TAXATION.** Delegation of power. Road improvement districts.

That Acts 1913, 1st Ex. Sess., ch. 43, creating road improvement districts, provides in section 7 that road district commissioners, after annually fixing the tax rate for road purposes and for purpose of paying interest on bonds, shall certify to the trustee of each county, etc., the tax rate, does not make the commissioners an agency of the county, so as to obviate the invalidity of the act, under Const., art. 2, sec. 29, giving the power to tax only to counties and incorporated towns. (*Post, pp. 7-10.*)

FROM WASHINGTON.

Appeal from the Chancery Court of Washington County.—C. J. St. John, Special Chancellor.

A. R. Johnson and S. E. Miller, for appellants.

Thad A. Cox, Harr & Burrow and James B. Cox, for appellees.

Mr. Chief Justice Neil delivered the opinion of the Court.

The bill in the present case was filed by certain taxpayers of Washington county to test the constitution-

ality of chapter 43 of the First Extra Session of the Acts of the legislature of 1913.

The first section of the act reads:

"That road improvement districts may be organized in the State of Tennessee for the purpose of constructing new roads, bridges, and culverts, and maintaining public roads already established, and to have full control of all public roads within the territory embraced within such road improvement districts; and such road improvement districts organized under the provisions of this act may issue and sell interest-bearing coupon bonds under the provisions of this act for the purpose of grading; graveling, and improving public roads within the road improvement district, and building bridges, levees, and culverts on said roads."

The second section provides the methods by which the road improvement districts may be formed, but we need refer specially only to two points in this section. One is that the district is not to exceed fifteen miles in length by fifteen miles in width, and that it may extend into one or more counties.

The third section provides for the registration of the certificate of the secretary of State.

The fourth section concerns the subject of elections. Among other things it is declared:

"It shall be the duty of the county election commissioners of the county in which said improvement district is created, or if in more than one county, then the county election commissioners of the county where the greatest portion of said territory embraced in the said

proposed improvement district lies, to order an election to be held under the election laws of the State at the several voting precincts embraced whithin the territory of said proposed ʼsaid road improvement district for the purpose of electing three road improvement district commissioners,'' etc.

Section 5 fixes the term of office of the commissioners.

Sections 6 and 7 read as follows:

''That the duties of the said board of road improvement district commissioners shall be to have full charge and control of all the public roads, levees, culverts, and bridges within their road improvement district; to let out all contracts for road, levee, bridge, or culvert work; and to issue interest-bearing coupon bonds when authorized as hereinafter provided, and to sell the same as hereinafter provided, the proceeds of which to be used exclusively for road improvement purposes within said district.''

''That the said board of road improvement district commissioners shall annually fix the tax rate for road purposes in their road improvement district, and for the purpose of paying interest on any bonds issued for road purposes under the provisions of this act, and shall certify to the trustee of each county wherein any part of said road improvement district lies the tax rate so fixed by said commissioners for said road purposes, said certificate to be made not later than October 1 of each year; said tax rate to be in lieu of all other taxes on property in said district for

road purposes. It shall be the duty of the trustee of each county in which any part of said road improvement district lies to collect the taxes for said road improvement purposes, and to keep such funds as a separate fund for the respective road improvement districts from which the same was collected. In the event that said road improvement district should lie within more than one county, the county trustee of each of the counties in which any part of the said road improvement district lies will pay over all taxes collected for road purposes on lands situated within said road improvement district within their respective counties to the county trustee of the county in which the greatest amount of the territory embraced within said road improvement district lies; and said county trustee shall keep said funds so paid over to him as a separate fund for the said road improvement district, and to be expended for road improvement purposes within said district."

Section 8 concerns the organization of the board.

Section 9 directs the method by which the roads shall be worked, also the construction of levees, bridges, and culverts.

Section 10 prescribes the oath of the commissioners.

Section 11 shows the method by which bonds may be issued.

Section 12 is on the subject of having road work done by contract.

Section 13 provides:

"That new roads may be opened or old roads

changed by the said board of road improvement district commissioners in all cases where said board may deem it to the best interest of said road improvement district and in such places as they may deem most expedient.''

The remaining provisions of the section concern the method of opening and laying out new roads, and, in connection therewith, the taking of property and fixing damages, etc.

Section 14 provides a sinking fund, to be created out of the proceeds of the sale of the bonds.

Section 15 fixes the compensation of the commissioners.

Several objections are raised to the act, but we need consider only one. That objection is based on article 2, section 29, of the constitution, which, so far as necessary to quote, reads:

''The general assembly shall have power to authorize the several counties and incorporated towns in this State to impose taxes for county and corporation purposes, respectively, in such manner as shall be prescribed by law; and all property shall be taxed according to its value, upon the principles established in regard to State taxation.''

The last clause refers to article 2, section 28, wherein it is provided:

''All property shall be taxed according to its value, that value to be ascertained in such manner as the legislature shall direct so that taxes shall be equal and uniform throughout the State.''

It is perceived that by section 7 the power of fixing the tax rate is conferred upon the road improvement district commissioners.  Under our constitution the power of taxation can be delegated by the legislature only to counties and incorporated towns.  *Lipscomb* v. *Dean,* 1 Lea (69 Tenn.), 546; *Waterhouse* v. *Public Schools,* 9 Baxt. (68 Tenn.), 398; Id., 8 Heisk. (55 Tenn.), 857; *Maxey* v. *Powers,* 117 Tenn., 381, 397, 101 S. W., 181.

The board of road improvement district commissioners does not fall within either class.  It is insisted that, inasmuch as the districts provided for are "improvement districts," the assessments are not required to be made by a county or municipality, but may be made directly by such district.  This is a mistaken view.  All the authorities hold that special assessments are a form of taxation.  This point was specially conceded in the majority opinion in the case of *Arnold* v. *Knoxville,* 115 Tenn., 195, 90 S. W., 469, 3 L. R. A. (N. S.), 837, 5 Ann. Cas., 881.  We are referred to *State ex rel.* v. *Powers,* 124 Tenn., 553, 137 S. W., 1110, as an authority in support of the proposition insisted on by the demurrants.  That case does not support such a contention.  On the contrary, it is distinctly shown that the assessments mentioned in that case were under the direct control and authority of the county court.

It is insisted that in any event it must be held that the road improvement district provided for is an agency of the county court, and as such may levy and

and collect the assessments for road construction and maintenance. There is nothing in the act that supports this contention. It is true, as suggested in the brief, that under section 7 it is made the duty of road improvement district commissioners, after annually fixing the tax rate for road purposes, and for the purpose of paying interest on any bonds issued for road purposes, to certify to the trustee of each county wherein any part of the improvement district lies the tax rate so fixed, and that it is made the duty of the trustee to collect the taxes so levied, and to keep the fund separate from other funds; but there is nothing in this provision indicating any control on the part of the county court. Furthermore, in case the road district happens to lie in two counties, the county having the larger mileage has entire control of the fund, to the exclusion of any other county or counties through which the road district may extend, although the difference may amount to only a foot or an inch.

Several other points are referred to in the briefs, but the foregoing objection wholly destroys the act, rendering it unnecessary that we should refer to any other provision. We may add, however, that inasmuch as an attempt was made to confer upon the road improvement district commissioners the complete control of the public road system of the counties, so far as those roads might lie within the proposed districts, and in view of the great area to which they might be extended, covering half of our largest counties and almost the whole of some of the smaller ones, it may be open

to grave question whether the whole costs of such an improvement could be devolved on the landowners lying within the district to the exclusion of the general public of the county, since stretches of road so great would necessarily be of very extensive and direct benefit to the public lying outside of such district. We do not authoritatively determine this question, but we quote from the last edition of Dillon on Municipal Corporations a passage which seems to us to contain much wisdom, viz.:

"Whether it is competent for the legislature to declare that no part of the expense of a local improvement of a public nature shall be borne by a general tax, and that the whole of it shall be assessed upon the abutting property and other property in the vicinity of the improvement, thus for itself conclusively determining, not only that such property is specially benefited, but that it is thus benefited to the extent of the cost of the improvement and then to provide for the apportionment of the amount by an estimate to be made by designated boards or officers, or by frontage or superficial area, is a question upon which the courts are not agreed. Almost all of the earlier cases asserted that the legislative discretion in the apportionment of public burdens extended thus far, and such legislation is still upheld in most of the States. But since the period when express provisions have been made in many of the State constitutions requiring *uniformity and equality of taxation,* several courts of great respectability, either by force of this require-

Smith v. Carter.

ment or in the spirit of it, and perceiving that *special benefits actually received* by each parcel of contributing property was the only principle, upon which such assessments can justly rest, and that any other rule is unequal, oppressive, and arbitrary, have denied the unlimited scope of legislative discretion and power, and asserted what must upon principles of equity and equality be regarded as the just and reasonable doctrine, that the cost of a local improvement ought to be assessed upon particular property only to the extent that it is specially and peculiarly benefited; and since the excess beyond that is a benefit to the municipality at large, it ought to be borne by the general treasury.'' Volume 4, page 2569.

The only ground of our decision, however, is that the provisions of article 2, section 29, have been violated. The act is therefore void, and the bill correctly challenged it. The demurrer must therefore be overruled, and the chancellor's decree reversed, and the cause remanded for answer and further proceedings.