FERGUSON *et al v.* G. W. TYLER, COUNTY JUDGE.

(*Nashville.* December Term, 1915.)

**1.  COUNTIES.  Funds.  Rights of taxpayers.**

All citizens and taxpayers of a county have such interest in the
subject-matter as entitles them to file a bill in behalf of them-
selves and all other citizens and taxpayers of the county to
enjoin the exercise of any of the powers attempted to be con-
ferred by private Acts 1915, chapter 184, authorizing the estab-
lishment of "communities" in the county on the ground of its
unconstitutionality.  (*Post, pp.* 28, 29.)

**2.  COUNTIES.  Funds.  Establishment of communities.  Con-
stitutional provisions.**

Private Acts 1915, chapter 184, applicable within the population
described, only to Montgomery county, providing for the es-
tablishment of communities and community centers for the im-
provement of roads and schools, and for social and industrial
advancement, and that the community should receive its pro-
portionate share of any county highway levy, and its *pro rata*
of school funds from State and other levies, is invalid in that
it transfers funds from the county treasury to the treasury of the
community intended as a *quasi* municipality in violation of
Constitution 1870, article 2, section 29, providing that the gen-
eral assembly may authorize counties and incorporated towns
to impose taxes for county and corporation purposes, respec-
tively, as prescribed by law.  (*Post, pp.* 29-32.)

Cases cited and approved:  Smith v. Carter, 131 Tenn., 1;  In re
Forked Deer Drainage District, 133 Tenn., 684;  State ex rel.
v. Cummings, 130 Tenn., 566;  National Bank v. Barber, 24 Kan.,
534;  Smith v. Haney, 73 Kan., 506.

Cases cited and determined:  Nashville v. Towns, 37 Tenn., 186;
Knoxville v. Lewis, 80 Tenn., 180;  State ex rel. v. Police Jury,
47 La. Ann., 1244.

Ferguson et al v. Tyler.

Constitution cited and construed:   Sec. 29, art. 2 (1870).

3.  **COUNTIES.    Taxation.    Constitutional provisions.**

Under such constitutional provision, the two purposes for which
taxes may be collected are distinct, so that the use to which
taxes are to be applied must be one for the benefit of the dele-
gate entity which levies the taxes.   (*Post, pp.* 29-32.)

4.  **COUNTIES.   "County."**

A "county" is a government within a government not to be dis-
solved or destroyed by legislative enactment.   (*Post, pp.* 33, 34.)

Cases cited and approved:   James County v. Hamilton County,
89 Tenn., 237; Eagle v. Beard, 33 Ark., 497; King v. Sullivan
County, 128 Tenn., 393; Raulston v. Marion County, 133 Tenn.,
433.

Case cited and distinguished:   Prescott v. Duncan, 126 Tenn., 106.

---

FROM MONTGOMERY

---

Appeal from the Chancery Court of Montgomery
County.—J. W. STOUT, Chancellor.

H. N. LEECH, COLLIS TATE and AUSTIN PEAY, for
appellants.

SAVAGE & FORT and DANIEL & DANIEL, for appellee.

MR. JUSTICE WILLIAMS delivered the opinion of the
Court.

The bill of complaint was filed to test the constitu-
tionality of chapter 184 of Private Acts 1915, which is
entitled:

"An act to authorize the establishment of communities and community centers in this State in counties having a population of not·less than 33,500 nor more than 34,000 under the last or any subsequent federal census, the organization of such communities being for the improvement of roads and .schools, and for social and industrial advancement."

The provisions of the act may be partially and briefly outlined as follows:

(a) That "communities" are authorized to be organized to include all or parts of a civil district, or two or more civil districts of a county.

(b) That near the center thereof there shall be established a "community center"—a building and grounds of sufficient capacity to accommodate for educational purposes all children of scholastic age who live in the bounds of the community; and that specified branches shall be taught.

(c) That in each community a managing board of five residents shall be chosen, not more than three males and not more than three females, by "the residents of the community of the age of twenty-one years and over, male and female."

(d) That this board shall have charge of all highways in the community; and that no new highway shall be opened or former highway abandoned or changed except by order of the board, to be ratified by the quarterly court of the county before taking effect, thus, it is claimed, denying to the county court the power to initiate and giving it the power of veto only.

(e) That the board shall have power over school property, including the power of purchase and sale thereof.

(f) That it shall be the duty of the board to construct and improve highways leading from the "center," and to hire or purchase conveyances for the transportation of pupils.

(g) That all road hands in the community shall work, under the orders of the board, under overseers appointed by it.

(h) That the "community shall receive its proper share of any county highway levy, the *pro rata* to be in proportion that the number of road hands in the community bears to the total number in the county as shown by the reports of the various overseers."

(i) that the community shall be entitled to its *pro rata* of all school funds derived from State and county levies in proportion to scholastic population.

(j) That the trustee of the county shall be the trustee of the community, keeping separate accounts of its road and school funds, which are to be checked out only by officers of the board.

(k) That all residents of the age of twenty-one and over, male and female, may participate in the creation of a community.

The right of complainants to maintain the bill and to enjoin the exercise of any of the powers attempted to be conferred by the act, is challenged. It is filed in behalf of complainants and all other citizens and taxpayers of Montgomery county, the only county to

Ferguson et al v. Tyler.

which the act is presently applicable. Complainants have such interest in the subject-matter as entitles them to maintain the suit.

The bill of complaint sets forth several grounds of attack on the validity of the act.

We are of opinion that the act must fall as unconstitutional for one reason at least.

We think it is patent that the act provides for a transfer of funds from the county treasury into what is in substance the community treasury, there to be used for the sole benefit of the latter. The "community" is intended to be a *quasi* municipality, nondescript in character, to be supported by taxes, not raised on values or from persons in its borders, but transferred to its use, as above indicated, from the county treasury.

Article 2, section 29, of the constitution of 1870 contains this provision:

"The general assembly shall have power to authorize the several counties and incorporated towns in this State, to impose taxes for county and corporation purposes, respectively, in such manner as shall be prescribed by law."

Under this section the power of taxation can be delegated by the legislature only to counties and incorporated towns; they are the only permissible lodgees of the power. *Smith* v. *Carter,* 131 Tenn., 1, 173 S. W., 430; *In re Forked Deer Drainage District,* 133 Tenn., 684, 182 S. W., 237. And the rule also is that the two purposes for which taxes may be collected under

such delegation are distinct, so that the use to which the taxes are to be applied must be one for the benefit of the delegate entity which levies the taxes. The legislature's power is affected by the limitation.

In *Nashville* v. *Towns,* 5 Sneed (37 Tenn.), 186, it was held, under the provision of the constitution of 1834, identical with that of the constitution of 1870 above quoted, that it was not within the power of the legislature to direct that a portion of the revenue of a county, even where collected within the limits of a municipal corporation, be paid into the treasury of the latter for its sole use and benefit, and that the effort to do so was unconstitutional and void. This court there argued:

"The county court levies the taxes with the view of providing for the current expenses of the county, and if the legisuature has the power to divert the fund, thus levied, to other and different purposes, it has the power to bankrupt the county at pleasure."

We add that it may reduce the integrity of the county to approximately *nil* so far as vital governmental functioning is concerned, since, if one of such community centers may be established, others may, until finally the entire area of the county is covered by them, with the result that the county as a body corporate would be denuded of power over schools and roads, purposes heretofore thought to be among the chief concerns of a county. And, further, if power over schools and roads may thus be treated, the control of other functions may also, such as authority

over health, pauperism, etc.   What then becomes of the county as a constitutional unit of government?

The vitality of the county would be sapped in the most effective way—by a depletion of its treasury. Financial resources, the lifeblood of government, would thus, so to speak, be drawn from the veins of the constitutional body corporate for transfusion into the arteries of the "community."   The process is one that would lead inevitably to the decrepitude and then to the dissolution of the county.

In *Knoxville* v. *Lewis*, 12 Lea (80 Tenn.), 180, referring to the specific ruling in *Nashville* v. *Towns, supra*, it was said:

"This was held on the principle that, the law authorizing its collection solely for the purpose of the county, the fund could not be diverted to another and different use by the authority of the State.   The theory of this opinion conclusively recognizes the principle that a municipal purpose and county purpose are separate and distinct things."

In the recent case of *State ex rel.* v. *Cummings,* 130 Tenn., 566, 172 S. W., 290, L. R. A., 1915D, 274, the authority of the case of *Nashville* v. *Towns* was recognized, and its ruling in limitation distinguished from that made in the later case.

The constitution of Louisiana is similar to ours on the point, and provides that the taxing power may be exercised by parishes (counties) and municipal corporations under authority granted to them by the general assembly for parish and municipal purposes.   In

*State ex rel* v. *Police Jury,* 47 La. Ann., 1244, 17 South., 792, the court stated:

"We agree in opinion with the district judge that the framers of the constitution intended to keep separate and distinct the taxing power of the State, that of the parishes, and that of the municipal corporations; that they never intended, in declaring that this power should be exercised by the parishes and municipal corporations 'under authority granted to them by the general assembly,' that this authority should extend to empowering either of them to do so for purposes other than those in which each was directly concerned. It is easy to see that through this act the taxing power of the towns could be supplemented by that of the parishes for town purposes. . . .

"When the police jury exercises its authority to impose licenses through the parish, it necessarily does so by ordinances general in their character, necessarily taking in people within as well as without the towns—its purpose is to utilize the moneys for general parish purposes—and it is difficult to see by what authority it can be prevented from doing so by an arbitrary order from the legislature that a particular portion of the fund should be devoted exclusively to the interests of one particular portion of the parish."

See, also, *National Bank* v. *Barber,* 24 Kan., 534; *Smith* v. *Haney,* 73 Kan., 506, 86 Pac., 550, cited in annotation of *State ex rel.* v. *Cummings,* 130 Tenn., 566, 172 S. W., 290, L. R. A., 1915D, 276.

With us a county (we do not refer to the county court) is "a government within a government," not to be dissolved or destroyed by direct legislative enactment. *James County* v. *Hamilton County,* 89 Tenn., 237, 242, 14 S. W., 601. This principle is recognized and not denied or modified by what was said and ruled in *Prescott* v. *Duncan,* 126 Tenn., 106, 134, 148 S. W., 229, thus:

"The integrity of the counties as a unit of government is not affected by the act in question."

"The idea of a government by means of counties, comes down from the remotest period of Anglo-Saxon history. It was imported to the American colonies with the common law, and entered, naturally and of course, into the frame of all their colonial governments; from whence it passed, by easy transition and necessary consequence, into the governments of the States. Our constitutions do not expressly provide for the organization of the territory into counties. This division is taken for granted. The idea of counties underlies all American Constitutions. They presuppose both the existence and necessity of counties, and, starting from that foundation, proceed to base thereon frames of government, in which the counties act all-efficient parts. The political power is composed of representatives from counties. Through them justice is administered, the revenue collected, and the local police rendered effective." *Eagle* v. *Beard,* 33 Ark., 497, 502; 11 Cyc., 340.

134 Tenn. 3

We think it too plain for extended comment that what has been said by us above is not in opposition to, but in harmony with, the recent cases of *King* v. *Sullivan County,* 128 Tenn., 393, 160 S. W., 847, and *Raulston* v. *Marion County,* 133 Tenn., 433, 181 S. W., 322.

We need not pass to the determination of other grave constitutional questions that would press for consideration but for the fact that the ruling on the above question is conclusive of the fate of the act.

The chancellor erred in sustaining a demurrer to the bill of complaint. Reversed and remanded.