WEST TENNEESSEE FLOOD CONTROL & SOIL CONSERVATION
DIST. *v.* WYATT et al.

(*Jackson*, April Term, 1951.)

Opinion filed March 7, 1952.

ASHLEY and ASHLEY, and LATTA, RICHARDS & LATTA, of Dyersburg, and BOND & HAYWOOD, of Brownsville, for appellants.

HOLMES & HOLMES, of Trenton, E. E. LEBO, of Tiptonville, and WEAKLEY & WEAKLEY, of Dyersburg, for appellees.

Mr. CHIEF JUSTICE NEIL delivered the opinion of the Court.

This cause originated by a petition in the Chancery Court of Lake County, Tennessee, for writs of certiorari and supersedeas to review the action of the Commissioners of the West Tennessee Flood Control and Conservation District in assessing the lands of the complainants pursuant to the provisions of Chapter 247 of the Public Acts of 1949. The writ of certiorari was directed to the Commissioners, and the entire record of the proceedings, disclosing the nature of the "special assessments", the public hearings and the final action of the Board was filed in compliance with the writ.

The writ of supersedeas was also issued; and while it was questioned in the trial court for alleged invalidity, it is not now material in determining the issues before us. The writ of certiorari was a common law writ and the cause was decided solely upon the record as certified by the Board.

We will refer to the parties as they appeared in the trial court, the land owners being the complainants, or petitioners, and the Flood Control and Conservation District as the defendants, or to the Commissioners as the Board.

The Board of Commissioners undertook to levy a tax, or a "special assessment", of fifty (50¢) cents per acre for the year 1950 upon the lands of petitioners which belonged to them and were located in Lake County, Tennessee, and were within the drainage area over which the said Commission claimed to have jurisdiction.

The petitioners charge that the action of the Board, in making the assessments, was illegal, arbitrary and void. The contention is further made that Chapter 247 of the Public Acts of 1949 is unconstitutional, void and obnoxious to the Constitution of Tennessee; and particularly so as to Article 1, Section 17; Article 1, Section 20; Article 2, Section 29; Article 1, Section 8; and the Constitution as a whole.

The defendants answered the petition, denying that Chapter 247, Acts of 1949, was unconstitutional upon any ground or for any reason stated in the original petition; that the special assessment was made according to law and that it was not void for any alleged illegality.

The statute herein assailed, and which gave rise to the present litigation, incorporates the West Tennessee Flood Control and Soil Conservation District in West Tennessee, provides for the appointment of a Commission of three members to manage and control the affairs of said District and authorizes the Commission to make ''special assessments'' against the land within the District which is benefited by the incorporation, and ''to provide revenue for the operation of said District.''

The area comprising the District includes all the lands in West Tennessee lying west of the Tennessee River. Section 1 of the Act provides that the incorporation is ''for the purpose of cooperating with the United States of America, through the Department of the Army and other Federal agencies for the construction and maintenance of flood control and drainage, and with the Tennessee Valley Authority and the Soil Conservation Authorities of the United States Government and the State of Tennessee'' etc.

Section 3 declares that the District thus incorporated shall be a '' 'Municipality' or public corporation in

perpetuity under its corporate name''; the powers vested in it shall be exercised by a majority of a Board of three Commissioners, who shall be appointed by the Governor of Tennessee.

Section 6 provides: *"Be it further enacted,* That for the purpose of providing funds to carry out the provisions of this Act, the Board of Commissioners shall have the power to levy special assessments against any and all lands within the district which may be benefited by said improvements in an amount that is necessary, not to exceed fifty cents per acre in any one year, said benefits to be determined by said Commissioners after a hearing before said Board.''

Section 8, Sub-section (c) authorizes the District ''To acquire by purchase, gift, devise, lease or exercise of the power of eminent domain or other mode of acquisition hold and dispose of real and personal property of every kind within or without the district, whether or not subject to mortgage or any other liens.''

It is further provided in Section 9, Sub-section (6) that the Board of Commissioners shall have the power and authority to ''provide without cost to the United States all lands, easements and rights-of-way necessary for the construction of any such project; (b) hold and save the United States free from damage due to the construction works; and (c) maintain and operate the works so constructed after their completion, in accordance with regulations prescribed by the Secretary of the Army or the Tennessee Valley Authority, as may be appropriate.'' The Board is given the power of eminent domain to be exercised as prescribed by Sections 3109 through 3134 of the Official Code of 1932.

All persons, residents of the District, ''aggrieved by any alleged arbitrary, unreasonable or discriminatory

ruling or action of said Commission, may appeal therefrom by petition to the Chancery Court".

The petitioning land owners say that Section 6 of the Act in question is obnoxious to the Constitution of Tennessee in that it "attempts an unlawful delegation of the power to tax"; that the Legislature may not lawfully delegate power to levy taxes, other than to counties and incorporated towns.

The particular Section of the Constitution relied on is Section 29 and reads as follows: "The General Assembly shall have power to authorize the several counties and incorporated towns in this State, to impose taxes for county and corporation purposes respectively, in such manner as shall be prescribed by law; and all property shall be taxed according to its value, upon the principles established in regard to State taxation. * * *"

The Chancellor held, in an able opinion filed with the record, that the Act violated the foregoing provision of the Constitution, also that the manner of assessing the petitioners' property was discriminatory, arbitrary and illegal. A decree was accordingly entered quashing the said assessments. An appeal was prayed and granted. The Board of Commissioners has filed the following assignments of error:

"1. The Court below erred in finding and holding that the provisions of Chapter 247 of the Public Acts of Tennessee for the year 1949 delegating to the Commissioners of the West Tennessee Flood Control and Soil Conservation District the power to levy special assessments upon lands embraced within a project was a delegation of the power to tax and therefore unconstitutional for its violation of Article II, Section 29 of the Constitution of the State of Tennessee.

"2. The Court below erred in finding and holding that the action of the Commissioners of the West Tennessee Flood Control and Soil Conservation District in levying a special assessment for the year 1950 against the lands of the petitioners was illegal, unreasonable, arbitrary and therefore void."

Whether or not the Act in question is an unlawful delegation of the taxing power is not determined by the term, "special assessments". While the law recognizes differences between special assessments and a tax, the purpose for which it is levied is controlling. The differences between a special assessment and a tax are (1) a special assessment can be levied only on land for special purposes; (2) a special assessment is based wholly on lands benefited. The imposition of a charge on all property, real and personal in a prescribed area, is a tax and not an assessment. Where the assessment is to provide revenue for both general and special purposes it must be denominated a tax as distinguished from a special assessment. In other words if the money collected, all or any part of it, is used for some purpose other than as a direct benefit to the land assessed, it is a tax. The Constitution expressly forbids the Legislature from delegating to a subordinate agency, such as the defendant "Flood Control and Soil Conservation District", the power to levy such a tax.

It cannot be doubted that the Legislature has authority to select or create new governmental agencies and delegate to them the power to make "special assessments" for the benefit of lands located in a specified area. *In re Forked Deer Drainage District*, 133 Tenn. 684, 689, 182 S. W. 237; *Arnold* v. *City of Knoxville*, 115 Tenn. 195, 90 S. W. 469, 3 L. R. A., N. S., 837.

The Chancellor in his analysis of the Statute says: "The act in question is general in its provision and purposes. There is a general provision as to the purposes for which the funds may be used. The Act does not provide that the assessment to be levied shall be for any particular purpose." The Act binds the Board to cooperate with the United States Government and other Federal Agencies, to purchase and hold real property within the District, to acquire property by the power of eminent domain, to hold the United States Government harmless for any injury and damage to property, all of which requires the collection of revenue and its expenditure for such general purposes. The caption of the Act expressly states the levy is *"to provide revenue for the operation of said District."* (Emphasis supplied.)

The theory upon which special assessments are sustained is stated in *Arnold* v. *City of Knoxville,* supra, that the landowner whose property is benefited by a local development should bear the burden of its cost. It is pointed out, however, that if the amount of the special assessment is out of all proportion, being "in excess of the benefit received, *it is set aside."* [115 Tenn. 195, 90 S. W. 475.] It is further said by the Court, quoting Cooley on Taxation (2d Ed.), 606, "They (assessments) are made and sustained upon the assumption that a prescribed portion of the community is to be especially benefited, * * * but such contributions ought not, by the same demand of justice, to be enforced in any case beyond the benefits received."

In holding that the assessment in the instant case does not meet the requirement of "special assessments" under the constitutional prohibition of Article 2, Section 29, Chancellor Gray made this further comment: "The Act contains no planned procedure or specification of any

kind stating or outlining the manner of determining special benefits and their ratio; nor does it contain or set up any plan for classification as to benefits of different tracts of land or any other plan of ascertaining and apportioning these benefits. The Act itself does not define the improvements to be made, nor does it provide for the filing of any pleading or any procedure specifying in detail any planned improvements.''

To all of the foregoing statement and the Chancellor's final conclusion we must give our unqualified assent.

Turning now to the record to determine the nature and extent of the proposed undertaking by the Board, and whether or not the lands of complainants would be benefited, it appears that the said Board stated in a formal resolution that it proposed to provide ''rights-of-way for the construction of the project authorized in Public Law No. 526, 79th Congress [60 Stat. 641], for the extension of the Tiptonville-Obion Levee and certain drainage improvements in Lake, Dyer, and Lauderdale Counties, etc., and to furnish other assurances required by the United States Government.'' At the several hearings by the Board, at which land owners were invited to be present, no one connected with the Board undertook to point out to anyone the cost of extending the Tiptonville-Obion Levee, or to what extent, if any, the lands of these petitioners would be benefited.

Counsel for the Board of Commissioners insist that they considered the cost of extending the Tiptonville-Obion Levee and related improvements and its effect upon the lands, or area, here involved, referring to the report of Lee O. Brayton, Jr., Army Engineer, and the letter of the Secretary of War. The report of the Engineer (Tr. p. 102) is very general. He refers to two projects. One lies partly in Lake, Obion and Dyer

Counties, while the other extends from the end of the Lake County Levee to or near the Boothspoint Road in Dyer County, and expresses the opinion that lands in this area would be benefited. No mention is made of the lands of these complainants. It appears from this report that 32,387.8 acres lie within the levee district, besides two State Highways, numerous County Roads and one Railroad, and he estimates the cost of the improvement at $41,642.97.

The Court in *Arnold* v. *City of Knoxville,* supra, fully realized the difficulty in formulating a method or plan whereby the taxing authority could determine ''benefits'' resulting to specific property from special improvements that are authorized by law to be constructed. But the assessing authority cannot act otherwise than in strict compliance with the statute. Thus in *City of Memphis* v. *Hill,* 141 Tenn. 250, 262, 208 S. W. 613, 617 (non-abutting property owners were assessed on the ground that they were benefited by an improvement district), it was said: ''There is no authority granted to otherwise determine what property is benefited, and it cannot be presumed that such determination was left to the arbitrary judgment of the city authorities, with no prescribed method of ascertaining the extent of, and consequent assessment for, such benefits.''

It is no answer to the question that the Legislature has delegated to the Board the authority of deciding if and when certain lands are benefited, where the assessment is forbidden by the Constitution on the ground that it may be used for general purposes or for a purpose which bears no relation to projects designed to benefit lands lying within a particular drainage district.

Contention is made by the Board that *State ex rel. Bigham* v. *Powers,* 124 Tenn. 553, 137 S. W. 1110, and *In*

re *Forked Deer Drainage District,* 133 Tenn. 684, 182 S. W. 237, support the constitutionality of the statute assailed in this proceeding; that the "Drainage" Law of 1909, and later amendments, authorize special assessments on property benefited by a local improvement, and that persons other than counties and municipalities may be authorized to determine benefits upon which special assessments are predicated.

An examination of the statute which the Court construed in *State ex rel. Bigham* v. *Powers,* supra, discloses such a disimilarity between that Act and the Act now under consideration that a distinction is not required. We only need to call attention to the express holding of the Court that the "assessments" could not be encroached upon for general purposes, but were valid under the well considered case of *Arnold* v. *City of Knoxville,* supra; that the expenses incurred and authorized to be paid out of county funds were for a "county purpose" and hence was not a lending of the county's credit. In the case at bar the statute gives a broad discretion to the Board in the expenditure of funds, derived solely from "special assessments". There is no limit as to the amount that may be spent upon projects inaugurated by the United States Government, and bearing no relation to "land use" or flood control, and which may be far distant from any lands upon which an assessment is levied. In the case *In re Forked Deer Drainage District,* supra, the Court sustained the Act authorizing a "Drainage District" embracing an area which covered more than one county; and reaffirmed *State ex rel. Bigham* v. *Powers* and *Arnold* v. *City of Knoxville.*

The next and final contention of the Board is that the Chancellor erred in holding that the action of the Commissioners in "levying a special assessment for the year

1950 against the lands of the petitioners was illegal, unreasonable, arbitrary and therefore void.''

The Act herein assailed does not contain any provision as to giving notice of a hearing, or the nature of such a hearing, except as recited in Section 6; nor is there any requirement as to time and place for a hearing when persons aggrieved may present evidence in their behalf or be apprised of any proof offered against them. It should be stated, however, that the Board gave notice by advertisement in newspapers and by mail that a hearing would be given the complainants and others who were interested. There was such a hearing at Dyersburg, at which time many land owners residing in the District, and counsel representing the complainants, were present. While only one of the Commissioners, General Drane, was present, it appears that he stated the entire record of the meeting would be transcribed and would be later considered by the Board in considering exceptions, etc. In this record was included the Act of the Legislature, the survey by the Army Engineer, the letter of the Secretary of War, and maps of the area. The Secretary, Mr. Strickland, certified that maps were on the table and were available to the land owners if any desired to see them.

It does not appear from the record as certified to the Chancery Court by the Board that any investigation had been made to ascertain if the project was economically sound and whether the benefits to complainants' lands would justify the assessment. It is impossible to determine from this record upon what basis it was decided to levy the maximum amount authorized by the statute. The amount of the tax was agreed upon by the Commission before any hearing was had at any time. While those present, including counsel for complainants, were

invited to speak out and make objections, if any, to the project and the proposed assessment, there was no comment. The names of various land owners were called and each replied, "No comment." It is said on their behalf there was nothing about which any intelligent comment could be made. "They had no information about any project, improvement or assessment. No statement as to the exact location, or estimated effect of any project, was offered or referred to." This we think is substantially correct. We find nothing in the record indicating that the Board at any time acquainted complainants, and others in the District, why it was necessary to assess the maximum sum of fifty (50¢) cents per acre for the year 1950, or what the tax rate would be for subsequent years as being necessary to maintain the proposed development.

The letter of the Secretary of War, which appears in the record, discusses a project of vast proportions, beginning in Fulton County, Kentucky, and extending south along the Mississippi River and ending at Fort Pillow in Lauderdale County, Tennessee. This letter conveys no information as to what benefits will inure to lands of complainants, if any, in Lake County, or any damage resulting from the project and which the Commissioners had assumed and which of necessity would have to be paid out of assessments against the lands of the complainants.

The authority sought to be created by the Act of 1949, herein assailed, bears no resemblance to Chapter 185, Acts of 1909, known as the "Drainage Law", which was upheld in the case of *State ex rel. Bigham* v. *Powers,* supra (compare Section 11 of that Act with Section 6 of the 1949 Act) ; nor with other public and private statutes where "special assessments" were authorized.

While Mr. Justice Wilkes, and his associates, in *Arnold* v. *City of Knoxville,* supra, expressed the view that it would be very difficult to formulate a plan or method to determine what lands are benefited by a local improvement project, it appears that the Legislature of 1909 was able to write into the statute (Section 11) a comprehensive and detailed method of assessing lands to be benefited. As we have heretofore pointed out the Act of 1949 provides no plan or method to ascertain benefits to any landowner residing in the District.

The whole theory upon which "special assessments" are upheld as not violative of constitutional limitations upon the power to tax, is that the property assessed "will be specially benefited thereby above the benefits received by the public at large; and, while the results may not be such as are anticipated, still the principle holds good. And it is likewise held that the burden may be apportioned between the public and the property benefited, and between the property owners themselves, according to actual benefits expected, or according to value, or, in some jurisdictions, according to the area or frontage as the Legislature may direct." *Arnold* v. *City of Knoxville,* supra [115 Tenn. 195, 90 S. W. 473].

The holding in the Powers case has been followed without exception by this Court in all cases involving the validity of "special assessment" statutes. The case of *Reelfoot Lake Levee Dist.* v. *Dawson,* 97 Tenn. 151, 36 S. W. 1041, 34 L. R. A. 725, was effectually overruled. In that case the drainage statute was held to be invalid for lack of uniformity in taxation and contrary to Art. 2, Section 28 of the Constitution, and was an unlawful delegation of the taxing power.

In *Smith* v. *Carter,* 131 Tenn. 1, 173 S. W. 430, 431, an Act creating "road improvement districts" and author-

izing commissioners in said districts to issue bonds and "fix the tax rate for road purposes", Pub. Acts 1913, 1st Ex. Sess. c. 43, was declared invalid on the ground that it was an unlawful delegation of the taxing power. Reference was made to *State ex rel. Bigham* v. *Powers* with the remark that it was not controlling.

The next case, involving the unlawful delegation of the taxing power, was *Ferguson* v. *Tyler*, 134 Tenn. 25, 183 S. W. 162. The Private Acts of 1915, Chapter 184, undertook to establish "communities" and "community centers" for the improvement of roads and schools, was held to be in violation of the Constitution, citing *Smith* v. *Carter*, supra, and *In re Forked Deer Drainage District*, 133 Tenn. 684, 182 S. W. 237, 238. The Act was held invalid because the power to tax could only be delegated to "counties and incorporated towns". The question of "benefits" resulting to property owners, however, was not involved. The Forked Deer Drainage District case expressly holds "A drainage district is a governmental agency to which power to levy special assessments may be properly delegated." It is upheld upon the same theory of *special benefits* to property as pointed out in *Arnold* v. *City of Knoxville*.

We think under the holding of the Court in the Powers case, and other cases affirming it, that if the "special assessment" is a *revenue* measure to support the purposes of the District, regardless of special benefits to lands within a given area, it violates Article 2, Section 29 of the Constitution. Likewise if Commissioners may, in their discretion, divert the funds of the District to the support of Projects that are initiated by Agencies of the Federal Government, regardless of special benefits to such lands, it constitutes an unlawful delegation of power. The Legislature will not be permitted to cir-

cumvent express provisions of the Constitution by delegating authority that may be exercised to the possible disadvantage of the lands assessed.

We find a diversity of opinion upon the question of the constitutionality of a statute as affected by facts of a specific case. In Page and Jones on Taxation by Assessment, Section 82, it is said:

"The legislature may enact a statute which under some circumstances may not operate as a violation of any constitutional rights of the parties affected thereby, while under other circumstances, it may operate as authority for such violation. * * * There is some authority for the proposition that a statute in order to be constitutional must be so framed that it does not permit the public officers while acting in compliance with its terms to violate constitutional rights. Thus a statute which leaves it to the discretion of commissioners to decide what proportion of the expense is to be assessed on each parcel of land is unconstitutional without reference to the propriety of the specific assessment made by virtue of such statute. So a statute by the terms of which it may be possible for the total amount assessed to exceed the total benefits has been held to be unconstitutional, irrespective of its effect in the particular case."

In 48 Am. Jur., Section 4, page 567, it is said: "The general rule is that statutes providing for special or local assessments are to be *strictly construed and strictly applied in favor of the owners of the property assessed,* and against the assessing authority." (Emphasis supplied.) "Such an assessment is an entirety, and the invalidity of a part will invalidate the whole. It is the right of the person whose property is to be reached to insist upon the observance of every form prescribed by

statute which will in the least tend to his protection.''
Section 123, p. 671.

The wisdom or unwisdom of the statute is a matter for the Legislature and not for the courts, which cannot legitimately question the policy or condemn the effects of any law consistent with the organic law of the State and the Nation.

We think, for the reasons stated in this opinion and the authorities cited, that Chapter 247, Acts of 1949, is an unlawful delegation of the taxing power, and is in violation of Article 2, Section 29 of the Constitution; that the assessment as levied was discriminatory, arbitrary and illegal. The assignments of error are overruled, and the Chancellor's decree is accordingly affirmed.