IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
NOVEMBER 20, 2000 Session

# MYRON ZIMMERMAN, ET AL. v. CITY OF MEMPHIS, ET AL.

**Direct Appeal from the Chancery Court for Shelby County**
**Nos. 110024-3 & 98-0795-2; The Honorable D. J. Alissandratos, Chancellor**

---

### No. W2000-01369-COA-R3-CV - Filed April 5, 2001

---

This appeal involves the determination of whether the City of Memphis properly levied a special assessment upon the property owners within the Central Business Improvement District in downtown Memphis. The affected property owners allege that the levy in question was not a special assessment. They allege that the levy was a tax in violation of section 7-84-501 et seq. of the Tennessee Code as well as Article 2, Section 29 of the Tennessee Constitution. For the following reasons, we affirm the decision of the trial court.

### Tenn. R. App. P. 3; Appeal as of Right; Judgment of the Chancery Court Affirmed

ALAN E. HIGHERS, J., delivered the opinion of the court, in which W. FRANK CRAWFORD, P.J., W.S., and DAVID R. FARMER, J., joined.

John McQuiston, II, David Scruggs, Andrew Raines, for Appellants

Robert L. J. Spence, Jr., for Appellees

## OPINION

### Facts and Procedural History

Pursuant to section 7-84-501 et seq. of the Tennessee Code, the City of Memphis established a Central Business Improvement District ("CBID"). The object of the CBID was the improvement and development of the business environment in downtown Memphis. The City of Memphis has powers pursuant to section 7-84-501 et seq. of the Tennessee Code to levy special assessments on all of the property owners in the CBID for the costs and expenses for all improvements within the CBID. These special assessments are enacted by ordinances passed by the City Council in cooperation with the Center City Commission. Each of the Plaintiffs owns property in the CBID.

The Center City Commission was established by ordinance to "manage and coordinate the comprehensive and coordinated redevelopment of the center city area. . . ." Memphis Code § 7-13. The Center City Commission is authorized to pay its own staff and counsel and to conduct all business necessary to manage and operate the business within the CBID.

The Memphis Central Business Improvement District II (CBID II) was created by Ordinance 4468 enacted January 7, 1997, pursuant to the Central Business Improvement District Act of 1990 codified at section 7-84-501 et seq. of the Tennessee Code. A public hearing regarding the passage of Ordinance 4468 was held on January 7, 1997, at the Memphis City Council meeting. Although notice was given to 6,295 property owners, only twelve members of the public appeared and spoke at the public hearing. None of the plaintiffs in this case appeared prior to or during the final hearing to protest the CBID II creation, rate of assessment, method of apportionment, the delegation of powers, or stated purposes of the Center City Commission as the district management corporation or the CBID II.

Ordinance 4468 levied an assessment of $.65 per $100.00 of assessed value, with the first $25,000.00 of value being exempt from the special assessment.[1] The city treasurer annually collected such costs and expenses upon the properties located within the CBID II in tax years 1997, 1998, 1999, for fiscal years 1998, 1999 and 2000, respectively. The Center City Commission annually determined the total costs and expenses to be paid from the special assessments. The City Council annually approved the proposed budget of the Center City Commission. Ordinance 4468 provided that the special assessment burden should be borne in proportion to the gross assessed value of the properties in the District, so that as each parcel appreciates, its special assessment levy increases according to the benefit received.

The special assessment rate of .65/$100.00 has remained unchanged since it was adopted in January 1997. The treasurer levied and collected the following special assessments under CBID II for the tax years as follows:

| Tax Year | For FY | Levied | Collected |
|----------|--------|--------|-----------|
| 1997 | FY98 | $1,292,628.89 | $1,257,662,42 |
| 1998 | FY99 | $2,047,613.65 | $1,938,525.13 |
| 1999 | FY00 | $2,109,692.63 | $1,786,546.23 |

Each month, the City remits the special assessment collections to the Center City Commission by bank wire. Pursuant to section 7-84-519 of the Tennessee Code and section 7-91 of the Memphis Code, the Center City Commission is the district management corporation for the Central Business Improvement District II. Accordingly, as District Manager Corporation, the Center City Commission has authority under the CBID Act of 1990.

---

[1] Residential property and government owned property within the district were completely exempted from the levy.

The court below granted summary judgment to the City of Memphis, finding that the City of Memphis had "substantially complied" with the requirements of section 7-84-501 et seq. of the Tennessee Code. Furthermore, the court below ordered the Memphis City Council to "review and approve the Central Business Improvement District apportionment on an annual basis to ensure compliance with the statutory requirements of T.C.A. § 7-84-501, et. seq."

These two consolidated suits were filed by the property owners for themselves and for a proposed class of all property owners in the CBID II who were subjected to the levy. Appellants herein seek a refund of the special assessments as well as interest and attorney's fees. Specifically, Appellants present the following issues, as we perceive them, for our review:

1) Whether the levy by the Memphis City Council was a valid special assessment or an unlawful tax in violation of § 7-84-501 et seq. of the Tennessee Code and/or Article 2, Section 29 of the Tennessee Constitution.
2) Whether the property owners in the Memphis CBID were deprived of due process of law under the Fourteenth Amendment of the United States Constitution.
3) Whether the property owners in the Memphis CBID were subjected to unlawful action under color of state law in violation of section 42 U.S. Code § 1983.
4) Whether the City of Memphis' failure to reduce the tax rate following a general reappraisal of property was a violation of section 67-5-1701 of the Tennessee Code.
5) If the case is reversed, whether the case should be remanded with directions to certify the class and award interest and attorney's fees.

We will address each issue in turn.

**Standard of Review**

We measure the propriety of the trial court's grant of summary judgment against the standard of Rule 56.04 of the Tennessee Rules of Civil Procedure, which provides that summary judgment is appropriate where the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

When reviewing a grant of summary judgment, an appellate court must decide anew if judgment in summary fashion is appropriate. See Cowden v. Sovran Bank/Central South, 816 S.W.2d 741, 744 (Tenn. 1991); Gonzales v. Alman Constr. Co., 857 S.W.2d 42, 44-45 (Tenn. Ct. App. 1993). Since this determination involves a question of law, there is no presumption of correctness as to the trial court's judgment. See id.

**Analysis**

First, the Appellants allege that the levy by the Memphis City Council was not a valid special assessment, but an unlawful tax in violation of section 7-84-501 et seq. of the Tennessee Code and

Article 2, Section 29 of the Tennessee Constitution. First, it is important to note the distinction between a tax and a special assessment. In Obion County v. Massengill, 151 S.W.2d 156 (Tenn. 1941), our supreme court explained the difference as follows:

> There is a clear and manifest distinction between a tax and a special assessment. A tax is imposed for a general or public purpose. It is levied for the purpose of carrying on the government. It is a charge on lands and other property which lessens its value, and in the proportion in which the owner is required to pay is his pecuniary ability diminished. . . On the other hand, a special assessment contains none of the distinctive features of a tax. It is assessed or levied for a special purpose, and not for a general purpose. It is not a charge on property which reduces its value. The assessment is made in the ratio of advantages accruing to the property in consequence of the improvement. . . .

Id. At 159 (quoting De Clercq v. Barber Asphalt Paving Co., 47 N.E. 367 (Ill. 1897)).

In order to resolve the case before us, our task is one of statutory construction. There are a number of principles of statutory construction, among which is the most basic rule: "to ascertain and give effect to the intention and purpose of the legislature." Gleaves v. Checker Cab Transit Corp., Inc., 15 S.W.3d 799, 802 (Tenn. 2000) (quoting Carson Creek Vacation Resorts, Inc. v. State Dep't of Revenue, 865 S.W.2d 1, 2 (Tenn. 1993)). However, the court must ascertain the intent "without unduly restricting or expanding the statute's coverage beyond its intended scope." State v. Sliger, 846 S.W.2d 262, 263 (Tenn. 1993). See also Gleaves, 15 S.W.3d at 802; Worley v. Weigels, Inc., 919 S.W.2d 589, 593 (Tenn. 1996); Owens v. State, 908 S.W.2d 923, 926 (Tenn. 1995). "The legislative intent and purpose are to be ascertained primarily from the natural and ordinary meaning of the statutory language, without a forced or subtle interpretation that would limit or extend the statute's application." State v. Blackstock, 19 S.W.3d 200, 210 (Tenn. 2000) (citing State v. Pettus, 986 S.W.2d 540, 544 (Tenn. 1999)). When statutory provisions are, as in this case, enacted as part of a larger Act, "we examine the entire Act with a view to arrive at the true intention of each section and the effect to be given, if possible, to the entire Act and every section thereof." Bible & Godwin Constr. Co. v. Faener Corp., 504 S.W.2d 370, 371 (Tenn. 1974).

The Appellants argue that the statutes at issue here providing for special assessments are to be strictly construed and strictly applied in favor of the owners of the property assessed. See e.g., West Tennessee Flood Control & Soil Conservation Dist. v. Wyatt, 247 S.W.2d 56, 62 (Tenn. 1952). In contrast, section 7-84-508 of the Tennessee Code states that "[t]his part. . . shall be liberally construed to effectuate its purposes." TENN. CODE ANN. § 7-84-508 (1998). The purpose of the act is stated in section 7-84-502 as follows: "elimination of urban blight and decay and the modernization and general improvement of such central business districts by governmental action is considered necessary to promote the public health, safety, and welfare of such communities. . . ." TENN. CODE ANN. § 7-84-502 (1998). Moreover, section 7-84-509 provides that "[i]n the event of a conflict between the provisions of this part and any other laws or parts of laws governing the state

-4-

of Tennessee, the provisions of this part shall govern." TENN. CODE ANN. § 7-84-509 (1998). Based on the foregoing, we find that, due to the plain language of the aforementioned sections of the Tennessee Code, the statutes in question must be liberally construed to effectuate their purpose.

The main thrust of Appellants argument concerns section 7-84-522(a) of the Tennessee Code. Section 7-84-522(a) states that "[t]he governing body of the municipality shall determine annually the total costs and expenses to be paid from the special assessments, and annually apportion such costs and expenses upon the various properties located within the district in accordance with the benefits conferred upon the various properties." TENN. CODE ANN. § 7-84-522(a) (1998). "Governing body" is defined in section 7-84-503 of the Tennessee Code as "the council, commission, board or other body exercising general legislative power in the municipality." TENN. CODE ANN. § 7-84-503(5).

Appellants argue that the Memphis City Council, as the governing body, did not comply with section 7-84-522(a). First, Appellants argue that the Memphis City Council did not annually determine "the total costs and expenses to be paid from the special assessments." Instead, Appellants argue, the city council simply passed a rate of $.65 per $100.00 of value. We disagree. The city council approves the proposed budget of the Center City Commission on an annual basis. The budget of the Center City Commission represents the total costs and expenses to be paid from the special assessments. We find that, by its annual review and approval of the proposed budget of the Center City Commission, the Memphis City Council determined the total costs and expenses to be paid by the special assessments and thereby complied with section 7-84-522(a) of the Tennessee Code.

Next, the Appellants argue that the Memphis City Council did not review and approve the apportionments as required by 7-84-522(a) to determine if the assessments were apportioned among the various properties in proportion to the benefits conferred upon them. Instead, Appellants argue, this was done by the city treasurer. We disagree. Upon review of the record, it is clear to us that the city treasurer does not fix the rate of the special assessment. The city treasurer merely collects the assessment after the Memphis City Council annually apportions the costs and expenses upon the various properties in accordance with the benefits conferred upon them. Section 7-84-522(b) provides that "[i]n determining the benefits to each lot or parcel of property within the district, the governing body may consider *any* of the following factors: square footage, front footage, *assessed value*, type of use, business classification, property location, zones of benefit, or a combination of such factors." TENN. CODE ANN. § 7-84-522(b) (1998) (emphasis added). As emphasized above, section 7-84-522(b) specifically lists "assessed value" as an appropriate factor to determine the benefit to each parcel of property within the district. The Memphis City Council complied with 7-84-522(a) by using "assessed value" to determine the benefits conferred upon each property in the district when it set a rate of $.65 per $100.00 of assessed value.

Appellants also point to section 7-84-522(c) of the Tennessee Code to argue that the Memphis City Council did not properly apportion the special assessment. Section 7-84-522(c) states that "[t]he fact that assessments may be spread uniformly over a large area within the district shall

not be conclusive that such assessment was arbitrarily made." TENN. CODE ANN. § 7-84-522(c) (1998). Appellants argue that a uniform assessment over an entire district such as the district in question is conclusive evidence that such assessment was arbitrarily made. We do not agree with Appellants' interpretation of the statute. The overall purpose and tenor of the Central Business Improvement District Act of 1990 is to improve local business climates. The Act itself grants broad discretion to municipalities to establish programs most consistent with their local needs. See TENN. CODE ANN. § 7-84-502(2)(1998). Moreover, as previously stated, section 7-84-508 emphasizes that the statutes in the Act shall be liberally construed to effectuate their purposes. We find that the uniform assessments over the properties in the district were not arbitrarily made by the Memphis City Council. Assessed value is an authorized method for determining the benefits to property in a district. See TENN. CODE ANN. § 7-54-522(b) (1998). Furthermore, we do not interpret the language of 7-84-522(c) for the proposition that a uniform assessment over a district is per se conclusive that such assessment was arbitrarily made.

The Appellants rely on West Tennessee Flood Control & Soil Conservation Dist. v. Wyatt, 247 S.W.2d 56 (Tenn. 1952) to support their argument. In Wyatt, the Board of Commissioners undertook to levy a special assessment of fifty cents per acre upon the lands of property owners in a certain flood control district in Lake County, Tennessee. See id. at 57. The court struck down the attempted special assessment as violative of Article 2, Section 29 of the Tennessee Constitution. See id. at 62. Wyatt, however, is distinguishable from the case at bar. In Wyatt, the caption of the Act expressly stated that the levy is "to provide *revenue* for the operation of said District." Id. at 59 (emphasis added). The Act did not provide that the assessment be levied for any particular purpose. The court stated that, "if the money collected . . . is used for some purpose other than as a direct benefit to the land assessed, it is a tax." Id. at 58. Furthermore, the court stated that "there is a general provision as to the purposes for which the funds may be used. The Act does not provide that the assessment to be levied for any particular purpose." Id. at 58. The court also stated that "the Act itself did not define the improvements to be made, nor does it provide for. . . any procedure specifying in detail any planned improvements." Id. at 59. As a result, the Act was held to be unconstitutional because the assessment could have been used for general purposes or for a purpose which bore no relation to projects designated to benefit property within the district.

In the instant case, however, the constitutionality of the statutory scheme is not at issue. It is also clear to us upon the record that the money collected from the special assessments is being used solely to benefit the properties in the CBID II. The "1999 Strategic Plan for the Continued Redevelopment of the Memphis Central Business Improvement District" lists eight redevelopment goals and 13 projects that are currently being driven by the Center City Commission. The special assessment funds are not paid into the general public treasury, and they are in no way used for general public expenses. All of these goals and projects specifically benefit the downtown properties within the CBID. As a result, for all of the aforementioned reasons, we find that the levy in question was a lawful special assessment in compliance with section 7-84-522 of the Tennessee Code as well as Article 2, Section 29 of the Tennessee Constitution.

Next, Appellants also contend that they were deprived of due process of law under the Fourteenth Amendment to the United States Constitution. Appellants posit that they never had the opportunity to be heard regarding the assessment and the benefits conferred upon the properties. We disagree. Before the assessment was implemented, the Memphis City Council sent notice to all property owners in the district and a hearing was held regarding the proposed assessment. The property owners within the district could have appeared and protested anything regarding the proposed district or assessment at the January 7, 1997 hearing. However, none of the Appellants appeared at the hearing to protest the proposed district or the proposed assessment. As a result, we find that Appellants due process rights were not violated.

Finally, Appellants alternatively argue that the failure of the City of Memphis to reduce the tax rate following a general reappraisal of property violated section 67-5-1701 et seq. of the Tennessee Code. Appellants point to section 67-5-1701(3) of the Tennessee Code, which states in relevant part that "in the event of a general reappraisal as determined by the state board, [the governing body] shall determine and certify a *tax rate* which will provide the same ad valorem revenue for that jurisdiction as was levied during the previous year." TENN. CODE ANN. § 67-5-1701(3) (1999) (emphasis added). Section 67-5-1701 et seq. pertains to taxes and is wholly inapplicable to special assessments. Since the City of Memphis levied a special assessment and not a tax upon the property owners within the district, we find that this issue is without merit.

We decline to address Appellant's remaining issues as they are inapplicable since we have determined that the levy in question was a valid special assessment.

**Conclusion**

For the aforementioned reasons, the judgment of the trial court granting summary judgment to the City of Memphis is affirmed. Costs on appeal are taxed against the Appellants, Myron Zimmerman, et al and J. F. Canepari Corp., et al, for which execution may issue if necessary.

 

_____
ALAN E. HIGHERS, JUDGE